Alexandria

MICHAEL V. SHEPPERSON, s/k/a
MICHAEL VINCENT SHEPPERSON

v.

COMMONWEALTH OF VIRGINIA

No. 1262-93-4

Decided February 7, 1995

COUNSEL

Corinne J. Magee, for appellant.

Margaret Ann B. Walker, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

OPINION

WILLIS, J.—On appeal from his convictions of first degree murder, robbery, and use of a firearm in the commission of murder, Michael V. Shepperson contends (1) that the trial court erred in refusing to suppress his statements to a police investigator, (2) that the trial court erred in refusing to strike the evidence on the robbery charge, (3) that the trial court erroneously instructed the jury on the issue of intent to rob, and (4) that the trial court erred in denying his motion for a special poll of the jury.

The trial court instructed the jury erroneously on the issue of intent to rob. That error requires reversal of all three convictions. We find no merit in Shepperson's other assignments of error.

On April 2, 1992, Shepperson killed Victor White and left his body in a ditch near Lorton. He stole White's watch, necklace, wallet, car, and $50 cash. He also stole and pawned White's rifle, which he had used to kill White.

On August 4, 1992, Fairfax police investigator Whilden went to the Albany Correction Institute in New York, where Shepperson was being held on New York charges. Shepperson had been appointed counsel on those charges. After being advised of his *Miranda* rights, Shepperson agreed to speak with Whilden about White's murder and signed a consent form. He told Whilden that someone else had killed White, but that he was involved. He admitted taking White's property, explaining that he intended to use White's identification to create a paper trail to mislead the police. On August 13, 1992, Whilden questioned Shepperson again. After signing a consent form waiving his *Miranda* rights, Shepperson confessed to killing White.

At trial, Shepperson moved to suppress his statements to Whilden. This motion was denied. At the conclusion of the Commonwealth's evidence and again at the conclusion of all of the evidence, Shepperson moved to strike the evidence as to robbery and first degree murder. These motions were denied. The trial court instructed the jury as to alternative elements of first degree murder—"that the killing was willful, deliberate and premeditated," or "that the killing occurred during the commission of, or the attempt to commit robbery."

On the second day of its deliberations, the jury submitted the following question to the court:

If Michael Shepperson did not kill Victor White with the intention of robbery can Michael Shepperson be found guilty of robbery after the murder?

After conferring with counsel, the trial court gave the following additional jury instruction:

In order to find the defendant guilty you must find that the violence or intimidation precede or be concomitant with the taking. It is immaterial that the victim is dead when the theft occurs.

Counsel for Shepperson excepted to this instruction, noting that it was not responsive to the question.

The jury convicted Shepperson on all charges. He moved for a special poll of the jury to determine on which theory—premeditation or felony murder—the jury based its finding of first degree murder. The trial court denied this motion.

## I.

Shepperson first contends that the trial court should have suppressed his statements to Investigator Whilden because Whilden interrogated him without counsel after counsel had been appointed for the New York charges. We find no error in the trial court's ruling.

[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981) (footnote omitted).

In *Arizona v. Roberson*, 486 U.S. 675 (1988), the Supreme Court enlarged the *Edwards* rule to embrace further police interrogation with respect to charges other than those as to which the right had been invoked. The Court said:

[A]s a matter of law, the presumption raised by a suspect's request for counsel—that he considers himself unable to deal with the pressure of custodial interrogation without legal assistance—does not disappear simply because the police have

approached the suspect, still in custody, still without counsel, about a separate investigation.

*Id.* at 683.

Shepperson argues that his Sixth Amendment right to counsel attached when counsel was appointed for him on the New York charges and that the rule of *Roberson* enlarged the scope of that right to embrace the Virginia charges as to which Whilden interrogated him. Thus, he argues, the trial court denied his Sixth Amendment right to counsel in refusing to suppress his statements to Whilden. We disagree.

■ *Roberson* addresses the Fifth Amendment right against self-incrimination. This right is not offense-specific. Had Shepperson invoked his right against self-incrimination, that invocation would have barred further police-initiated interrogation, even on unrelated charges. *Id.* at 687-88. However, Shepperson never invoked his Fifth Amendment right against self-incrimination. Rather, upon being properly advised of his *Miranda* rights, he freely and voluntarily executed a waiver of rights form and consented to interrogation by Whilden.

■ In *Eaton v. Commonwealth*, 240 Va. 236, 397 S.E.2d 385 (1990), *cert. denied*, 502 U.S. 824 (1991), upon facts paralleling this case, the Supreme Court held:

The Edwards rule is invoked, and . . . custodial interrogation must cease, when the accused, having received *Miranda* warnings and having begun to respond to the questions of the authorities, "has *clearly* asserted his right to counsel."

*Id.* at 253-54, 397 S.E.2d at 395-96. Shepperson was informed of his *Miranda* rights. He voluntarily signed a consent form waiving his *Miranda* rights and talked to Whilden. He was familiar with the justice system, having been arraigned on charges in New York and having accepted the benefit of court-appointed counsel on those charges. Thus, he voluntarily and knowingly waived his Fifth Amendment right against self-incrimination.

The Sixth Amendment right . . . is offense-specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced . . . .

*McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). The Sixth Amendment does not bar police-initiated interrogation with respect to charges unrelated to those for which counsel has been employed. *Jackson v. Commonwealth*, 14 Va. App. 414, 416, 417 S.E.2d 5, 7 (1992).

Shepperson's New York counsel was appointed specifically for the New York charges. The Virginia charges, addressed by this appeal, had not been lodged. Shepperson's Sixth Amendment right to counsel had not attached with respect to these charges. Thus, Whilden's interrogation did not intrude upon Shepperson's Sixth Amendment right to counsel.

## II.

We find the evidence sufficient to support Shepperson's convictions. Therefore, although we reverse those convictions because of an erroneous jury instruction, we order that the charges be remanded for retrial, if the Commonwealth be so advised.

## III.

Shepperson next contends that the trial court erroneously instructed the jury as to when the intent to steal must exist as an element of robbery. He argues that a trial court must give a direct and correct response to an inquiry by the jury and its failure to do so is ground for reversal. *See Wren v. Commonwealth*, 66 Va. (25 Gratt.) 989, 992 (1875). He argues that the trial court's answer to the jury's question was erroneous in two respects. First, it was not responsive to the jury's question. Second, it failed to give a correct answer to the question. We agree.

■ First, the statement contained in the trial court's answer was correct. The violence or intimidation by which robbery is accomplished must precede or be concomitant with the taking. *See Bunch v. Commonwealth*, 225 Va. 423, 439, 304 S.E.2d 271, 280, *cert. denied*, 464 U.S. 977 (1983). If the robbery is accomplished by killing the victim, it is immaterial that the victim is dead when the theft occurs. *See Patterson v. Commonwealth*, 222 Va. 653, 664, 283 S.E.2d 212, 219 (1981). However, the jury's question did not address the timing of force, intimidation or theft. The inquiry addressed the time at which the intent to rob must exist. Thus, the trial court's answer was unresponsive to the question and failed to meet the requirement of *Wren*.

■ Second, for theft by violence or intimidation to constitute robbery, the intent to steal must exist at the time of the violence or intimidation. *See Branch v. Commonwealth*, 225 Va. 91, 95-96, 300 S.E.2d 758, 759-60 (1983). This was the issue addressed by the jury's question, an issue raised by the evidence. If Shepperson killed White intending to steal his property, the theft was robbery. If Shepperson killed White only for a purpose unrelated to theft, and as an afterthought decided to steal his property, the theft was larceny. In failing to respond correctly to the issue raised by the jury's question, the trial court failed to satisfy the requirement of *Wren* and committed error requiring reversal of the robbery conviction.

## IV.

■ Finally, Shepperson contends that the trial court erred in denying a special poll of the jury to determine the theory of first degree murder on which he was convicted. He cites *Williams v. Commonwealth*, 153 Va. 987, 151 S.E. 151 (1930), in which the Supreme Court stated:

> [i]t is always necessary . . . before a judgment can be entered upon a verdict, that it appear just what the jury found or intended to find.

*Id.* at 994, 151 S.E. at 153.

■ The trial court correctly refused a special poll of the jury. In Virginia, an accused has the right to "[p]oll the jury simply to ascertain if each juror assents to the verdict as rendered." *Clark v. Commonwealth*, 135 Va. 490, 498, 115 S.E. 704, 706 (1923). There is no right to a special poll to inquire how or why each juror arrived at the verdict. *Id.*

> The deliberations of the jury and the motives which actuate them in arriving at a verdict are secret and usually even jurors themselves will not be allowed to impeach their verdict by testimony as to secret motives which controlled them, or misunderstanding instructions of the court, the effects of the evidence, the measure of their verdict and the like.

*Id.* at 498, 115 S.E. at 707.

The rule of *Williams* is inapplicable to this case. In *Williams*, it was unclear whether the defendant had been convicted of a misdemeanor or a felony. 153 Va. at 994-95, 151 S.E. at 153. The offense for which he was convicted in the verdict appeared a misdemeanor, but the sentence was as though for a felony. *Id.* Thus, the verdict contained an ambiguity requiring resolution. The verdict in this case contained no such ambiguity.

## V.

However, the erroneous instruction on robbery undermines the validity of the murder and firearm verdicts. Because the jury was instructed that it might base a conviction of first degree murder on a finding "that the killing occurred during the commission of, or the attempt to commit robbery," our reversal of the robbery conviction requires that we also reverse the convictions for first degree murder and use of a firearm in the commission of murder. A consideration of the sufficiency of the evidence to support the conviction of murder does not alter this requirement. The fact that the jury may have reached its conclusions upon the application of an erroneous legal principle invalidates the verdicts.

Shepperson's convictions of first degree murder, robbery, and use of a firearm in the commission of murder are reversed and this case is remanded to the trial court for retrial, if the Commonwealth be so advised.

*Reversed and remanded.*

Barrow, J., and Coleman, J., concurred.