Tuesday            19th

January, 1999.


Lorenzo McLean,                                              Appellant,

 against      Record No. 1637-97-1
              Circuit Court Nos. CR96002332-00 and
                                 CR96002332-01

Commonwealth of Virginia,                                    Appellee.


Upon a Petition for Rehearing En Banc

Before the Full Court


On December 18, 1998 came the appellee, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on December 8, 1998, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on December 8, 1998 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellee shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

Present:  Judges Benton, Elder and Lemons
Argued at Norfolk, Virginia


LORENZO McLEAN
                                        OPINION BY
v.  Record No. 1637-97-1           JUDGE JAMES W. BENTON, JR.
                                        DECEMBER 8, 1998
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
               John C. Morrison, Jr., Judge

        Fay F. Spence (Spence & Whitlow, on brief),
        for appellant.

        Michael T. Judge, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


    A jury convicted Lorenzo McLean of robbery and of capital

murder for a killing committed in the commission of a robbery.

On this appeal, McLean contends the trial judge erred by

instructing the jury during their deliberations on "concert of

action" in response to the jury's questions about "intent."  For

the reasons that follow, we reverse the convictions and remand

for a new trial.

                              I.

    The evidence at trial proved that a police officer found the

unconscious and severely beaten body of William Jones, Jr. in a

park in the City of Norfolk on January 1, 1995.  Near Jones'

body, the police found a bloodstained concrete splash block.

Jones later died.  An autopsy revealed that Jones had received

extensive blunt force trauma to his head, chest, and other areas

of his body.  Jones also had an incision in his neck which cut his jugular vein and a single stab wound to his chest.  The assistant medical examiner testified that several of the injuries suffered by Jones would have been sufficient alone to eventually cause Jones' death.

Nathaniel Lindsey testified that he, Lorenzo McLean, Neil Bates, and another man known as "Skip" were drinking alcoholic beverages and smoking marijuana in the park at night when they encountered Jones, who was drinking beer in the park.  After the men talked with Jones, they pooled their money with Jones in an unsuccessful attempt to buy more alcoholic beverages.

Lindsey testified that McLean accused Jones of being homosexual and called Jones a "fag" several times.  Jones responded to McLean's taunts by attempting to hit McLean.  When Jones missed, McLean and Bates each struck Jones with their fists, causing Jones to fall.  Lindsey then kicked Jones twice.  McLean and Skip continued the assault by throwing a bicycle on Jones.  After McLean stated that Jones had seen their faces, McLean said, "we got to kill him."  McLean then asked if anyone had a weapon.

According to Lindsey's testimony, Lindsey and Bates grabbed a concrete splash block near a building.  Lindsey testified, however, that he dropped the splash block and walked away because he "didn't feel right" about dropping it on Jones.  Lindsey testified that when he turned the corner of a building he met a

woman and smoked a cigarette with her. During the ten minutes he was smoking the cigarette, he heard no noise from the park. Lindsey testified that he then returned to the park and saw Bates and Skip drop the splash block on Jones' head. Bates and McLean then dropped the splash block on Jones' head.

Lindsey further testified that McLean and Skip discussed whether Jones had money. Lindsey saw Skip put his hands in Jones' pockets and throw Jones' wallet and identification in a field behind the park. He testified that he saw no one take money from Jones. Lindsey said McLean then broke a bottle and stuck it in Jones' neck. Lindsey testified that after he, McLean, Bates, and Skip left the park, McLean changed his shoes because they were covered with blood.

Sharee McCorkle testified that on that same night she heard noise coming from the park. She heard a man saying, "come on, man, help me," and heard McLean, whom she had known "a long time," respond, "I can't help you." McCorkle testified that, although the park was unlit, she saw five or six people in the park and saw McLean as he slammed the cement block on Jones' face.

Keisha Sanderson testified that when she saw McLean that night, he had blood on his tennis shoes and had food stamps. When she later saw McLean, he had changed clothes.

During the presentation of his evidence, McLean testified that he could not remember where he was on January 1, 1995. He

also testified that he had never met Jones, that he was not in the park the night Jones was killed, and that the Commonwealth's witnesses were "out to get him."

After the trial judge instructed the jury at the conclusion of the evidence, the jury sent two written questions to the judge during their deliberations. They asked: "May we have a legal definition of intent?" and "Is the word intent collective?" The trial judge told the prosecutor and McLean's counsel that he would not answer the first question. The trial judge then asked the jury to state "what they mean by that [second] question." The jury restated the question as follows: "Once the intent is spoken by one member of a group and the act is performed, does the intent to commit the act apply to all? What is the law concerning this?" Over McLean's counsel's objection, the trial judge responded by informing the jury according to the following instruction offered by the Commonwealth:

> If you find that there is a concert of action with the resulting crime one of its incidental, probable consequences, then whether such crime was originally contemplated or not, all who participate in any way in bringing it about are equally answerable and bound by the acts of every other person connected with the consummation of the resulting crime.

The jury convicted McLean of capital murder and robbery and recommended a sentence of life in prison on the capital murder conviction. The trial judge imposed that sentence. Because McLean was a juvenile at the time of the robbery offense, the

trial judge determined McLean's sentence for robbery and imposed

a life sentence.

Rule 3A:16(a) provides that "[i]n all cases the court shall instruct the jury before arguments of counsel to the jury."  The principle is also well established that "[i]t [is] . . . proper for the [trial judge] to fully and completely respond to inquiry which might come from the jury for information touching their duties."  Williams v. Commonwealth, 85 Va. 607, 609, 8 S.E. 470, 471 (1889).  See also Marlowe v. Commonwealth, 2 Va. App. 619, 625, 347 S.E.2d 167, 171 (1986).  "The trial judge's 'imperative duty [to properly instruct the jury] . . . is one which can be neither evaded nor surrendered.'"  Johnson v. Commonwealth, 20 Va. App. 547, 554, 458 S.E.2d 599, 602 (1995) (citation omitted).  Thus, when read together, Rule 3A:16(a) and Virginia case decisions allow the trial judge to give a supplemental jury instruction which clarifies an existing instruction or a principle previously existing before the jury.

The jury's questions clearly indicate that the jury was seeking a definition of intent, an issue in the case.  At the conclusion of the evidence, the trial judge had given the jury the following instructions concerning intent:

> The defendant is charged with the crime of capital murder.  The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1)  That the defendant killed William Jones; and
>
> (2)  That the killing was willful, deliberate and premeditated; and

(3) That the killing occurred during the commission of a robbery while the defendant was armed with a deadly weapon.

 *     *     *     *     *     *     *

"Willful, deliberate, and premeditated" means a specific <u>intent</u> to kill, adopted at some time before the killing, but which need not exist for any particular length of time.

 *     *     *     *     *     *     *

The defendant is charged with the crime of robbery of William Jones. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:

(1) That the defendant <u>intended</u> to steal; and

(2) That property was taken; and

(3) That the taking was from William Jones or in his presence; and

(4) That the taking was against the will of the owner or possessor; and

(5) That the taking was accomplished by beating William Jones.

 *     *     *     *     *     *     *

The principal elements of robbery, a crime against the person of the victim, are the taking, the <u>intent</u> to steal and violence. The violence must occur before or at the time of the taking. The <u>intent</u> to steal and taking must co-exist. The offense is not robbery unless the <u>intent</u> was conceived before or at the time the violence was committed.

 *     *     *     *     *     *     *

You may infer that every person <u>intends</u> the natural and probable consequences of his acts.

(Emphasis added).

When the jury asked the questions, "May we have a legal definition of intent?" and "Is the word intent collective?," the trial judge did not answer the first question and asked the jury to state "what they mean by that [second] question." The jury then asked, "Once the intent is spoken by one member of a group and the act is performed, does the intent to commit the act apply to all? What is the law concerning this?" In response to these inquiries, the trial judge interjected for the first time the issue of "concert of action." "However, if a supplemental jury instruction given in response to a jury's question introduces a new theory to the case, the parties should be given an opportunity to argue the new theory." United States v. Fontenot, 14 F.3d 1364, 1368 (9th Cir.), cert. denied, 513 U.S. 966 (1994). Failure to allow argument after a new issue is introduced in the case results in "unfair prejudice." Id. See also Bouknight v. United States, 641 A.2d 857, 861 (D.C. 1994) (after giving a supplemental instruction on aiding and abetting, a new theory of liability, the trial judge properly allowed limited additional argument).

None of the jury instructions had mentioned "concert of action" or touched upon that principle as a theory of liability. Thus, this is not a case in which the trial judge amended an instruction that was erroneous when earlier given to the jury. See Blevins v. Commonwealth, 209 Va. 622, 628, 166 S.E.2d 325, 330 (1969) (stating that the trial judge "not only has the right

but . . . a duty to amend instructions which appear to be erroneous or misleading after summation by counsel").  The jury had not been instructed on the concept of "concert of action," and the jury made no inquiry about that concept.  By injecting in the trial for the first time during jury deliberations the concept of "concert of action," the trial judge deprived McLean of the right to have his counsel argue to the jury the principles contained in the instruction as they related to the facts of the case.  See Rule 3A:16(a).

In addition, when responding to the jury's inquiry concerning their duties, the trial judge must fully and accurately inform the jury on matters upon which the jury makes inquiry.  See Jones v. Commonwealth, 194 Va. 273, 278, 72 S.E.2d 693, 696 (1952).  The supplemental instruction that the trial judge gave to the jury falls short of this standard.  Even if the trial judge's response to the jury's inquiry correctly stated the law of "concert of action," the trial judge erred by answering the jury in a manner that was incomplete and nonresponsive to the jury's inquiry.  See Shepperson v. Commonwealth, 19 Va. App. 586, 591-92, 454 S.E.2d 5, 8 (1995).  Simply put, "the statement by the [trial judge] in the case in judgment did not fully inform the jury upon the point to which their inquiry was directed." Jones, 194 Va. at 278, 72 S.E.2d at 696.

The failure to respond to the jury's inquiry concerning intent and the giving of an instruction on "concert of action,"

without directly responding to the jury's inquiry, "might have had the effect to mislead the jury as to the law of the case." Wren v. Commonwealth, 66 Va. (25 Gratt.) 989, 994 (1875). Indeed, as the Supreme Court observed in Wren, "[t]he jury, composed of . . . [people] without knowledge of legal principles, might have been led to believe [another proposition from the trial judge's nonresponsive answer]." Id. at 995. The jury certainly could have concluded that the question of intent, on which they sought further guidance, was not as germane to their inquiry as was the principle of "concert of action," which the trial judge injected at the request of the Commonwealth.

For these reasons, we reverse the convictions and remand for a new trial.

Reversed and remanded.

Lemons, J., dissenting.

As the majority fairly recites, substantial evidence supports McLean's convictions for capital murder and robbery. The victim's murder was committed in a particularly vicious manner. The evidence supports the jury's finding that McLean and others repeatedly dropped a heavy concrete splash block from a nearby drain spout onto the victim's head, chest and other parts of his body. The victim's jugular vein was cut, and he sustained a single stab wound to his chest. The majority reverses McLean's convictions for capital murder and robbery because a supplemental jury instruction was allegedly improperly given. For the reasons stated below, I respectfully dissent.

After the jury was instructed, it retired for deliberation. During deliberation, the jury returned with two written questions: "May we have a legal definition of intent?" and "Is the word intent collective?" McLean objected to any further communications with the jury on the grounds that "it unduly emphasizes a portion of the evidence and it invades the deliberations of the jury; and . . . [he] further object[ed] to any attempt of the Court to clarify whether the intent can be collective by offering a concert of action instruction." McLean also argued that "[t]he defense does not want such an instruction. It is prejudicial to the defendant for such an instruction to be granted when the defense will have no opportunity to argue the meaning of that instruction and how it

applies." Finally, McLean argued, "[b]asically, it violates the defense due process right to present its defense to have that instruction granted at this late hour when the prosecution could have had that instruction offered earlier." McLean stated, "[w]e would also request a mere presence instruction if a concert of action instruction were given." The trial judge did not answer the first question. The trial judge asked the jury to explain what it meant by the second question.

The jury restated its question as follows: "Once the intent is spoken by one member of a group and the act is performed, does the intent to commit the act apply to all? What is the law concerning this?" The following instruction was given to the jury over McLean's objection:

> If you find that there is a concert of action with the resulting crime one of its incidental, probable consequences, then whether such crime was originally contemplated or not, all who participate in any way in bringing it about are equally answerable and bound by the acts of every other person connected with the consummation of the resulting crime.

McLean's question presented on appeal is stated generally: "Whether the trial court erred by instructing the jury on concert of action, over defendant's objection, in response to the jury's questions about intent during the middle of their deliberations?" Only those arguments presented in the petition for appeal and granted by this Court will be considered on appeal. Rule 5A:12(c); see Cruz v. Commonwealth, 12 Va. App. 661, 664 n.1, 406

S.E.2d 406, 407 n.1 (1991).  "In order to be considered on appeal, an objection must be timely made and the grounds stated with specificity."  Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986).  "To be timely, an objection must be made when the occasion arises -- at the time the evidence is offered or the statement made."  Id. at 621, 347 S.E.2d at 168.  Matters raised on appeal that were not raised at trial are defaulted.  Rule 5A:18.

A review of the record reveals that McLean objected for the following reasons:

1.  "[W]e further object to any attempt of the court to clarify whether intent can be collective by offering a concert of action instruction.  The defense does not want such an instruction."

2.  "It is prejudicial to the defendant for such an instruction to be granted when the defense will have no opportunity to argue the meaning of that instruction and how it applies."

3.  "Basically, it violates the defense due process right to present its defense to have that instruction granted at this late hour when the prosecution could have had that instruction offered earlier"

4.  "We would also request a mere presence at the scene is not enough instruction if a concert of action instruction were given."

5.  "We think that would inject a new issue in this case that we won't have an opportunity to argue to the jury."

6.  "We think it would be prejudicial to the defendant and we think only the defendant would have a right to ask for the instruction at this point and not the Commonwealth . . . ."

7.  "[T]he instruction the Commonwealth had offered, we submit is unclear and improper."

I.

Each of these objections shall be considered seriatim:

1.  "[W]e further object to any attempt of the court to clarify whether intent can be collective by offering a concert of action instruction.  The defense does not want such an instruction."

No basis for this "objection" is stated; McLean simply said he did not want it to be given.  This "objection" does not meet the requirement of specificity required to preserve an issue for appeal.  Rule 5A:18.

2.  "It is prejudicial to the defendant for such an instruction to be granted when the defense will have no opportunity to argue the meaning of that instruction and how it applies."

Rule 3A:16 provides in part that in "all cases the court shall instruct the jury before arguments of counsel to the jury."  Additionally, "it is proper for a trial court to fully and completely respond to a jury's inquiry concerning its duties."  Marlowe, 2 Va. App. at 625, 347 S.E.2d at 171.  Assuming without deciding that the concert of action instruction was new material and not clarification of previously given instructions, McLean never requested opportunity to argue the matter before the jury.  It may have been either a tactical decision or an oversight by McLean's counsel, but in either event, McLean cannot complain about his inability to argue based upon the new instruction because he failed to request an opportunity to do so.  Rule 5A:18.

In Blevins v. Commonwealth, 209 Va. 622, 166 S.E.2d 325

(1969), the trial court gave a supplemental instruction during jury deliberations. Among other observations made by the Supreme Court when it upheld the trial judge's decision, the Court said, "As a result of the amendment, counsel for defendant moved for a mistrial, which was not granted. He did not ask for an opportunity to make additional argument to the jury." Id. at 628, 166 S.E.2d at 329.

Had McLean asked permission to argue the matter before the jury, the request may have been granted, but the Commonwealth would have been granted an opportunity to address the jury as well. As a tactical decision, McLean may not have asked to address the jury because he did not want to afford the Commonwealth another opportunity to present its case to the jury. McLean cannot allege error where he has not presented the issue to the trial judge and may not have wanted the opportunity at trial that he vigorously asserts on appeal. "This Court has said the primary function of Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials." Neal v. Commonwealth, 15 Va. App. 416, 422, 425 S.E.2d 521, 525. "The purpose of Rule 5A:18 is to provide the trial court with the opportunity to remedy any error so that an appeal is not necessary." Knight v. Commonwealth, 18 Va. App. 207, 216, 443 S.E.2d 165, 170 (1994).

    3. "Basically, it violates the defense due process right to

present its defense to have that instruction granted at this late hour when the prosecution could have had that instruction offered earlier."

A conclusory allegation of a due process violation, absent some specific claim, does not preserve any issue for appeal. McLean complains the instruction was "granted at this late hour when the prosecution could have had that instruction offered earlier." As previously stated, however, a trial court has an obligation to respond fully and completely to a proper inquiry by the jury even if the inquiry is made during deliberations. <u>See</u> <u>Marlowe</u>, 2 Va. App. at 625, 347 S.E.2d at 171. McLean's argument that the instruction was granted at a "late hour" is, therefore, without merit.

4. "We would also request a mere presence at the scene is not enough instruction if a concert of action instruction were given."

McLean's counsel made this statement during argument over whether the concert of action instruction would be given to the jury. Although counsel indicated that "we would . . . request" an instruction concerning "mere presence at the scene," when the trial judge made his decision to give the concert of action instruction, no further request and no tender of an instruction were made.

Even if McLean had tendered such an instruction, the trial judge would have been justified in rejecting the instruction based upon the evidence in the case. The Commonwealth's evidence was that the defendant was an active participant in the crime;

the defendant contended he was not present.  Neither theory of the case supported a "mere presence" instruction.  When the evidence does not support an instruction, it is not error for the court to refuse to grant it.  See Satcher v. Commonwealth, 244 Va. 220, 256–57, 421 S.E.2d 821, 843 (1992).

5.    "We think that would inject a new issue in this case that we won't have an opportunity to argue to the jury."

The majority cites United States v. Fontenot, 14 F.3d 1364, 1368 (9th Cir. 1994):  "if a supplemental jury instruction given in response to a jury's question introduces a new theory to the case, the parties should be given an opportunity to argue the new theory."  The majority ignores the failure of McLean's counsel to request an opportunity to argue to the jury.  In Fontenot, counsel similarly "contend[ed] that his counsel should have been permitted to make further argument to the jury after its question was answered."  Id. at 1368.  However, recognizing that "no request for leave to reopen the argument was made," the Ninth Circuit declined to consider the issue on appeal, stating, "[w]e have no ruling to review."  Id.  As previously stated, assuming without deciding that a new issue was contained in the supplemental instruction on concert of action, the record contains no reference to any request by counsel to argue to the jury after the court gave the supplemental instruction.

6.    "We think it would be prejudicial to the defendant and we think only the defendant would have a right to ask for the instruction at this point and not the Commonwealth . . . ."

Virginia law does not support McLean's position.  A trial court may provide supplemental instructions to a jury over a defendant's objection.  <u>Blevins</u>, 209 Va. at 628, 166 S.E.2d at 330.  In fact, "[i]t is proper for a trial court to fully and completely respond to a jury's inquiry concerning its duties." <u>Marlowe</u>, 2 Va. App. at 625, 347 S.E.2d at 171.  The trial court must "give a direct and correct response to an inquiry by the jury and its failure to do so is ground for reversal." <u>Shepperson v. Commonwealth</u>, 19 Va. App. 586, 591, 454 S.E.2d 5, 8 (1995).

    7.    "[T]he instruction the Commonwealth had offered, we submit is unclear and improper."

Nothing in this assertion preserves an issue for appeal. Rule 5A:18.  McLean did not inform the trial judge in what manner the instruction was unclear, and his mere assertion that it was improper adds nothing specific for the court to consider.

McLean maintained that, for the reasons stated in the objections listed above, it would be "prejudicial" to the defense to give the concert of action instruction.  Before giving the concert of action instruction to the jury, the trial judge asked, "Tell me in what particulars you think that is an improper instruction."  Incorporating all of the above-referenced objections, McLean's counsel replied, "We have already indicated, Judge, why we think it would be improper."  Thereafter the following colloquy ensued:

THE COURT:          But insofar as if there is to be an answer to that

- 20 -

question, is that not a proper legal answer to the question notwithstanding the prejudice?

DEFENSE COUNSEL: That you include in there if –

```
THE COURT:          If there is concert of
                    action.

DEFENSE COUNSEL:    I think it would be better
                    if you find there was
                    concert of action.

THE COURT:          Well, that's okay I think.

PROSECUTOR:         That's fine, Judge.

THE COURT:          All right.  Bring them
                    out Mr. Sheriff.

DEFENSE COUNSEL:    We would agree that
                    that language is the
                    definition, but we are
                    opposed to you giving
                    that at all.

THE COURT:          I understand and I note
                    your exception for the
                    record.
```

Thereafter, the trial judge gave the instruction McLean conceded was a "proper legal answer to the question."

On appeal, McLean contends for the first time that the concert of action instruction was out of context, misleading and incomplete; that intent was not defined; that the instruction failed to emphasize that the intent had to exist before or during the violence; and that the trial court violated Rule 3A:16(a). McLean failed to object to the trial judge's decision not to answer the first question raised by the jury ("May we have a legal definition of intent?").  These arguments are not properly before us on appeal.  See Able v. Commonwealth, 16 Va. App. 542, 550, 431 S.E.2d 337, 342 (1993) (where defendant failed to raise objection regarding "confusing nature" of jury instruction at

- 22 -

trial, he is barred from raising issue on appeal).

                                II.

    The majority opinion advances the following reasons for

reverse of McLean's convictions:
    1.  The jury was seeking a legal definition of intent, and
         the trial judge failed to provide it.

    2.  The trial judge "injected the issue of 'concert of
         action'" into the case, "and the jury made no inquiry
          about that concept."

    3.  The trial judge's response to the jury's second question
         was "incomplete and nonresponsive to the jury's
          inquiry."

    4.  The trial judge's failure to answer the first question
          combined with the giving of the instruction on
"concert          of action," at the request of the Commonwealth,
may have          misled the jury as to the law of the case.

    Each of these shall be considered seriatim:

    1.  The jury was seeking a legal definition of intent, and
          the trial judge failed to provide it.


    When the trial judge stated that he would not answer the

jury's question, "May we have a legal definition of intent?,"

McLean's counsel raised no objection to the failure to respond.

In fact, McLean objected to _any_ response.  This issue was not

before the trial court and is not even presented to us in

McLean's appeal.

    An alleged error will not be considered a basis for reversal

where counsel fails to make a contemporaneous objection.  Rule

5A:18.
    2.  The trial judge "injected the issue of 'concert of
         action'" into the case, "and the jury made no inquiry
          about that concept."

The majority states that in responding to the questions asked by the jury during its deliberations, the trial court introduced a new theory to the case. The majority states that because the jury made no inquiry about the concept of "concert of action," "the trial judge erred by answering the jury in a manner that was incomplete and nonresponsive to the jury's inquiry." I respectfully disagree. The jury asked, "Is the word intent collective?" Upon further inquiry from the court, the jury asked, "Once the intent is spoken by one member of a group and the act is performed, does the intent to commit the act apply to all? What is the law concerning this?" The trial judge, the prosecutor, and McLean all believed the question implicated the concept of "concert of action." McLean agreed that it was a proper response; he objected for other reasons stated above.

3. The trial judge's response to the jury's second question was "incomplete and nonresponsive to the jury's inquiry."

The objections made by McLean at trial had nothing to do with whether the court's response was incomplete or nonresponsive. In fact, McLean agreed that the instruction was a correct statement of the law; he objected on other grounds, stated earlier in this dissenting opinion.

4. The trial judge's failure to answer the first question, combined with the giving of the instruction on "concert of action," at the request of the Commonwealth, may have misled the jury as to the law of the case.

The majority states that the trial court's failure to respond to the jury's first inquiry about the legal definition of

intent, and the subsequent "giving of an instruction on 'concert of action,' may have caused the jury to believe that the question of intent . . . was not as germane to their inquiry as was the principle of 'concert of action,' which the trial court injected at the request of the Commonwealth."  Again, McLean never raised an objection that the jury could be misled about the law of the case because the court answered only their second question.  See Able, 16 Va. App. at 550, 431 S.E.2d at 342.

The majority decides this case on grounds that have been raised for the first time on appeal.  These issues are not properly before us.  For the foregoing reasons, I would affirm the convictions.