COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Bray and Bumgardner
Argued at Salem, Virginia


DOUGLAS JAMES, JR.

MEMORANDUM OPINION[*] BY
v.   Record No. 0082-00-2     JUDGE RICHARD S. BRAY
AUGUST 22, 2000
CLARENCE H. CARTER, COMMISSIONER,
 VIRGINIA DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Herbert C. Gill, Jr., Judge

William T. Fitzhugh (Beddow, Marley,
Trexler & Fitzhugh, on brief), for appellant.

Eleanor Anne Chesney, Assistant Attorney
General (Mark L. Earley, Attorney General;
Ashley L. Taylor, Jr., Deputy Attorney
General; Siran S. Faulders, Senior Assistant
Attorney General, on brief), for appellee.


In disposition of a complaint alleging "sexual abuse" by

Douglas James, Jr. (appellant), the Department of Social Services

(DSS) determined "Founded - Sexual Abuse - Level I," a decision

affirmed by the trial court. On appeal, appellant urges us to

reverse, contending that the evidence was insufficient to support

the finding and, further, that DSS failed to audio tape the

interview with the alleged victim in violation of the Virginia

Administrative Code and related DSS policy. Finding no error, we

affirm the disputed order.

───────────────

   * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

The parties are fully conversant with the record, and this memorandum opinion recites only those facts necessary to a disposition of the appeal. We view the facts in the light most favorable to the DSS.

I.

On March 17, 1998, the Chesterfield/Colonial Heights Department of Social Services (local agency) received a complaint that N.F., a minor female, had been "sexually abused" by appellant, while she was a "ward" of the Bon Air Juvenile Correctional Center (Bon Air) and he was employed as a Juvenile Correction Officer at the facility. In response to the complaint, a Child Protective Services worker (CPS worker) conducted an investigation and determined "Founded - Sexual Abuse - Level I," a disposition subsequently affirmed in successive appeals, first by the local agency, followed by the Commissioner, Virginia Department of Social Services (DSS) after an administrative hearing and, finally, by the trial court.

The record of the administrative and related proceedings below includes the investigative report prepared by the CPS worker, together with the hearing testimony of both the CPS worker and defendant and certain documentary proofs. Such evidence disclosed that appellant oftentimes visited Keller Cottage, the unit that housed N.F. while a resident at Bon Air, during his "breaks" from assigned duties elsewhere. On these occasions, N.F. "always came to him," once dressed only in "a robe and panties,"

-

and the two would engage in conversation, without "touching." The frequency of appellant's visits prompted another staff member to question him "about the youth." Appellant responded that he "knew [N.F.] from the street during the time that she dated his brother." Appellant's regular appearances at Keller Cottage ceased after N.F. was discharged from Bon Air.

Shortly thereafter, J.H., also a female ward at Bon Air during N.F.'s stay, reported to staff person Andrea Arrayo that N.F. had stated she and appellant "had sex" in the shower area of Keller Cottage prior to N.F.'s release. J.H. further recalled appellant and N.F. "talking about a relationship" and described "notes" appellant had written to N.F., both before and after the incident. After speaking with J.H., Arrayo remembered that, on the single evening appellant assisted her at Keller Cottage, she returned from an errand, after an absence of "five to seven minutes," to find "the [cottage] lights . . . dimmed" and appellant "locking [N.F.'s] door." Upon her inquiry, appellant had explained that N.F. had "to go to the bathroom."

Within a month, N.F. was returned to Bon Air, interviewed by the CPS worker and confirmed the allegations. In recounting events, N.F. stated that appellant opened the door to her room at Keller Cottage and "told her to come to the bathroom," demanding, "you're gonna give me some." Despite her protest, "it was not right," appellant "rushed her to pull her pants down," and "had sex" with her for "two to five minutes." N.F. reported that she

-

and appellant had intercourse only on the single occasion, and insisted she "did not want to."  The interview "wasn't taped" by the CPS worker, "[d]ue to the noisy environment, lack of privacy and constant interruptions."

Testifying at the administrative hearing, appellant admitted an "inappropriate relationship" with N.F. and inexplicably lying "about knowing [her] from the street," but denied the alleged sexual activity.  He acknowledged writing and telephoning N.F. following her release, but claimed such contacts were only to ascertain "why she was lying on [him]."  Attacking N.F.'s credibility, appellant emphasized that she had previously denied "having sex" with a staff member in an interview with State Trooper James Inge and otherwise made inconsistent statements with respect to the allegations.

## II.

"In an appeal to the circuit court from a decision by an agency, the burden is upon the appealing party to demonstrate error."  Carter v. Gordon, 28 Va. App. 133, 141, 502 S.E.2d 697, 700-01 (1998); Code § 9-6.14:17.  The evidence is viewed in the light most favorable to the DSS, and the "court's review of issues of fact is limited to the agency record."  Id. at 141, 502 S.E.2d at 701; Code § 9-6.14:17.  The Administrative Process Act provides that "the duty of the court with respect to issues of fact is limited to ascertaining whether there was substantial evidence in the agency record upon which the agency as the trier of the facts

-

could reasonably find them to be as it did."  Code § 9-6.14:17

(emphasis added).

> The "substantial evidence" standard, adopted
> by the General Assembly, is designed to give
> great stability and finality to the
> fact-findings of an administrative agency.
> The phrase "substantial evidence" refers to
> "such relevant evidence as a reasonable mind
> might accept as adequate to support a
> conclusion."  Under this standard,
> applicable here, the court may reject the
> agency's findings of fact "only if,
> considering the record as a whole, a
> reasonable mind would necessarily come to a
> different conclusion."

Virginia Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308

S.E.2d 123, 125 (1983) (citations omitted) (emphasis in

original).

It is well established that hearsay evidence is admissible

at an administrative hearing conducted in accordance with the

Administrative Process Act.  See Carter, 28 Va. App. at 141, 502

S.E.2d at 701.  "If the agency relies on hearsay evidence, the

court reviewing the sufficiency of that evidence on appeal may

give it the same weight as any other record evidence."  Id.

The Virginia Administrative Code defines "Founded - Sexual

Abuse - Level I":

> "Founded" means that a review of the facts
> shows by a preponderance of the evidence
> that child abuse and/or neglect has
> occurred.  A determination that a case is
> founded shall be based primarily on first
> source evidence; in no instance shall a
> determination that a case is founded be

-

based solely on indirect evidence or an anonymous complaint.

22 Va. Admin. Code 40-705-10.

Sexual abuse occurs when there is any act of sexual exploitation or any sexual act upon a child in violation of the law which is committed or allowed to be committed by the child's parents or other persons responsible for the care of the child pursuant to § 63.1-248.2 of the Code of Virginia.

22 Va. Admin. Code 40-705-30(E).

Level 1. This level includes those injuries/conditions, real or threatened, that result in or were likely to have resulted in serious harm to a child.

22 Va. Admin. Code 40-700-20(1).

Here, N.F. reported details of her relationship with appellant, including the subject sexual activity, to both the CPS worker and J.H. Her recollections were corroborated by appellant's unusual attention to the child, both immediately preceding and following the incident, including frequent visits with her at Keller Cottage and personal notes, and the observations of Arrayo on the evening of the incident. When called upon to explain his interests in N.F., appellant untruthfully claimed a prior acquaintance "from the street," later acknowledging "inappropriate" contact with her. In rendering the administrative decision, the DSS Commissioner expressly found both N.F. and J.H. "credible."

Thus, substantial evidence in the record supports the administrative disposition, and a reasonable mind would not

-

<u>necessarily</u> come to a different conclusion.  Accordingly, we affirm the decision of the trial court.[1]

<u>Affirmed.</u>

---

[1] Appellant also argues that the DSS disposition must be reversed because the local agency neglected to "audio tape" the interview with N.F., in violation of the Virginia Administrative Code and attendant DSS policy.  22 Va. Admin. Code 40-705-30(B). However, appellant failed to specifically "assign[]" such "error[]" in his "petition for appeal" to the trial court, as mandated by Rule 2A:4(b).  Thus, the court correctly recited in the disputed order that the issue was "not properly before the court" for judicial review.  <u>See</u> <u>Mayo v. Commonwealth</u>, 4 Va. App. 522-23, 358 S.E.2d 759, 760 (1987).

-

Benton, J., dissenting.

The Commissioner argues that consideration of the issue whether the DSS followed its mandated procedure is procedurally defaulted. Specifically, he asserts that "[r]eview of the issues raised by . . . [Douglas] James is barred . . . because he failed to preserve any objections he may have raised before the circuit court." The majority holds that James' claim that the DSS neglected to "audio tape" the interview with the child in violation of its rules is procedurally barred. I disagree.

The record contains the trial judge's opinion letter, which states as follows:

> In his petition [James] designates two . . . errors of law for review. First, [James] contends that there was insufficient evidence to support the agency finding of fact, and second, [James] contends that the disposition is not based on "primarily first source evidence" and therefore violates the Department of Social Services policy manual.

On this appeal, James raises the following two issues: "Whether the evidence was insufficient as a matter of law for a founded level 1 disposition against James" and "Whether the agency's determination is insufficient as a matter of law as the agency did not follow its mandated procedures." We have consistently held that the primary purpose of requiring timely and specific objection is to "'provide the trial [judge] with the opportunity to remedy any error so that an appeal is not necessary.'" McLean v. Commonwealth, 30 Va. App. 322, 331, 516

-

S.E.2d 717, 721 (1999) (citation omitted). When the trial judge has the opportunity to rule on the merits of the issue, the matter has been properly preserved for appeal. See Campbell v. Commonwealth, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991) (en banc) (holding that an issue is preserved for appeal when "the trial [judge] was adequately advised of the defendant's position, . . . consider[ed] the issue raised, and . . . had the opportunity to take corrective action").

Although the majority decides that James did not preserve for appeal the issue of the agency's failure to "audio tape" the interview, the record establishes that James' petition for appeal to the circuit court does allege that the DSS's disposition violates its policy because it is not based "primarily on first source evidence." I believe that allegation was sufficient to present the issue in the trial court. Notably, the Commissioner does not contend that the petition for appeal was deficient in that regard. I would hold that the issue whether the DSS failed to follow its mandated procedure has been preserved for appeal.

Neither the Administrative Process Act nor the DSS's basic law permits the introduction of hearsay evidence in the agency hearing. See Code § 9-6.14:1, et seq.; Code § 63.1-248.6:1. Although the Commissioner in his brief states that Code § 9-6.14:12 permits hearsay, one only need read the statute to

-

see that it does not sanction the use of hearsay.  Code

§ 9-6.14:12 provides, in pertinent part, as follows:

> A.  The agency shall afford opportunity for the formal taking of evidence upon relevant fact issues in any case in which the basic laws provide expressly for decisions upon or after hearing and may do so in any case to the extent that informal procedures under § 9-6.14:11 have not been had or have failed to dispose of a case by consent.

> \*       \*       \*       \*       \*       \*       \*

> C.  In all such formal proceedings the parties shall be entitled to be accompanied by and represented by counsel, to submit oral and documentary evidence and rebuttal proofs, to conduct such cross-examination as may elicit a full and fair disclosure of the facts, and to have the proceedings completed and a decision made with dispatch.  The burden of proof shall be upon the proponent or applicant.  The presiding officers at such proceedings are empowered to (i) administer oaths and affirmations, (ii) receive probative evidence, exclude irrelevant, immaterial, insubstantial, privileged, or repetitive proofs, rebuttal, or cross-examination, rule upon offers of proof, and oversee an accurate verbatim recording of the evidence, (iii) hold conferences for the settlement or simplification of issues by consent, (iv) dispose of procedural requests, and (v) regulate and expedite the course of the hearing.

Our decision of Carter v. Gordon, 28 Va. App. 133, 141, 502

S.E.2d 697, 701 (1998), also incorrectly states that the Act

permits hearsay evidence and, as its sole authority for that

proposition, wrongly cites to Code § 9-6.14:12.  The

-

Commissioner points to no other statutory authorization for its

consideration of hearsay evidence.

The DSS's regulations define a founded complaint as

follows:

> "Founded" means that a review of the facts
> shows by a preponderance of the evidence
> that child abuse and/or neglect has
> occurred.  A determination that a case is
> founded shall be based primarily on first
> source evidence; in no instance shall a
> determination that a case is founded be
> based solely on indirect evidence or an
> anonymous complaint.

22 Va. Admin. Code § 40-705-10.  The DSS's policy manual

addresses various levels of dispositions in the following

manner:

> Founded dispositions must be categorized
> into one of three levels.  Categorization is
> dependent on the nature of the act and the
> seriousness of the harm or threatened harm
> to the child as a result of maltreatment.
> In all founded cases, there may be
> circumstances influencing the severity of
> the abusive or neglectful incident.  The
> circumstances may increase or decrease the
> severity of harm or threatened harm.  The
> level for a founded disposition must be
> supported by a preponderance of the
> evidence.  The evidence supporting the level
> must be documented in the record.

7 DSS Service Programs Manual, § III (Child Protective Services

Manual), Ch. A, Part IV (July 1998 ed.).  The regulations also

provide the following explanation:

> Level 1.  This level includes those
> injuries/conditions, real or threatened,

-

that result in or were likely to have resulted in serious harm to a child.

22 Va. Admin Code § 40-700-20.

According to the DSS's own regulations, in making these determinations, "the hearing officer shall only consider that evidence, presented by either party, which is substantially credible or reliable." 22 Va. Admin. Code 40-705-190(H)(12). Implementing that requirement, the DSS's regulations require that the child protective service worker's interview with the child "must be audio tape recorded" unless the following specified extenuating circumstances exist:

> 1. The child protective services worker shall conduct a face-to-face interview with and observation of the alleged victim child. All interviews with alleged victim children must be audio tape recorded except when the child protective services worker determines that:
>
>> a. The child's safety may be endangered by audio taping;
>>
>> b. The age and/or developmental capacity of the child makes audio taping impractical;
>>
>> c. A child refuses to participate in the interview if audio taping occurs; or
>>
>> d. In the context of a team investigation with law-enforcement personnel, the team or team leader determines that audio taping is not appropriate.

22 Va. Admin. Code 40-705-80. The service worker testified, however, that when she interviewed the complainant she did not

make an audio tape recording because "we don't tape those events."

At the hearing, the service worker testified and gave her version of statements the child made concerning the events in question.  Although none of the extenuating circumstances existed, the child's interview was not audio taped.  In view of the proscription in the regulations, the service worker's testimony should not have been admitted in evidence.  "[H]earsay . . . traditionally has been considered unreliable evidence." Myrick v. Commonwealth, 13 Va. App. 333, 337, 412 S.E.2d 176, 178 (1991).  Under the DSS's own rules, the "first source evidence" would have been either the child's testimony or an "audio tape record[ing]" of the child's statement.  Under the circumstances of this case, any other evidence of her complaint was not reliable evidence pursuant to the regulatory scheme.

This record supports James' contention that the evidence supporting the DSS's finding was based on unreliable hearsay evidence.  The DSS's determination is based on "indirect evidence" contrary to the DSS's own rules, which require that the "determination that a case is founded shall be based primarily on first source evidence."  Accordingly, I would hold that there is not "substantial evidence in the agency record" to support a determination of "Founded Sexual Abuse Level I."  See Code § 9-6.14:17; Atkinson v. Virginia Alcoholic Beverage Control Comm'n, 1 Va. App. 172, 176, 336 S.E.2d 527, 529 (1985).

-

For these reasons, I would reverse the trial judge's decision.[2]

_____

[2] In accordance with the DSS's determination that the child's allegations against James were founded, the DSS sent James a letter, stating, in pertinent part:

> After our investigation, we feel that there is <u>a preponderance of evidence</u> that the alleged Sexual Abuse occurred. Therefore, we have submitted a disposition of Founded, Sexual Abuse, Level I of [N.F.] by you to our Child Abuse Central Registry, where it will be retained for 18 years.

(Emphasis added). Although the DSS's disposition was "Founded, Sexual Abuse, Level I," the administrative code indicates that in the context of the central registry: "'Founded' means that a review of all the facts shows <u>clear and convincing evidence</u> that child abuse and neglect has occurred." 22 Va. Admin. Code 40-700-10 (emphasis added). Therefore, James' name should not have been placed on the central registry because the agency found only by a preponderance of the evidence, not by clear and convincing evidence, that the allegations were established.

-