COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Humphreys and Senior Judge Hodges
Argued at Chesapeake, Virginia


PHILLIP McCURTIS ASKEW, JR.

                                                MEMORANDUM OPINION[*] BY

v.       Record No. 1436-02-1             ROBERT J. HUMPHREYS
                                               NOVEMBER 4, 2003

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
William C. Andrews, III, Judge

Charles E. Haden for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(Jerry W. Kilgore, Attorney General, on brief), for appellee.


Phillip McCurtis Askew appeals his convictions, upon a conditional plea of guilty, for 10 counts of robbery, 10 counts of wearing a mask in public, 10 counts of use of a firearm in the commission of robbery, one count of use of a firearm in the commission of abduction, and one count of abduction.[1] Askew contends that the trial court erred in denying his motion to suppress his confession and certain evidence obtained by police from a trash can located outside the rooming house in which he lived. Specifically, Askew argues that police unlawfully continued to "interview" him, in the absence of counsel, despite the fact that Askew had "unequivocally invoked his right to an attorney." Askew further argues that he possessed an expectation of

---

     * Pursuant to Code § 17.1-413, this opinion is not designated for publication. Further, because this opinion has no precedential value, we recite only those facts essential to our holding.

     [1] Askew was also charged with several additional offenses which were *nol prossed* by the Commonwealth pursuant to a plea agreement. Those charges are not at issue on this appeal.

privacy in the trash can located outside of the rooming house and that police unlawfully searched the trash can. For the reasons that follow, we affirm the judgment of the trial court.

We first note that, during his arraignment, Askew entered a guilty plea to each of the relevant charges, "voluntarily," but "with the exception of Alford."[2] Askew agreed that the Commonwealth possessed sufficient evidence to convict him of the charges and pled guilty. When advised that the plea forfeited his right to appeal, Askew's trial attorney said "we have . . . on the record already the objections and exceptions . . . [concerning] the voluntariness and propriety of the confession," and the "admissibility of certain physical evidence that was recovered by police authorities based on the search of the dwelling and surroundings." The trial court accepted Askew's plea in this regard, and found him guilty as charged on the relevant indictments.

Before we address the merits of Askew's appeal, we must first address his contention that, although he used the term "Alford" in entering his plea of guilty, he intended to enter a conditional plea of guilty pursuant to Code § 19.2-254.[3] Askew claims that both the Commonwealth and the trial court understood Askew to be entering a conditional plea of guilty,

---

[2]

> The so-called "Alford plea" takes its name from North Carolina v. Alford, 400 U.S. 25 (1970). An Alford guilty plea is one where the defendant refuses to admit guilt, or even protests his innocence, but, nonetheless, wants to enter a guilty plea. The Supreme Court ruled that an admission of guilt is not a constitutional requisite to the imposition of a criminal penalty.

Zigta v. Commonwealth, 38 Va. App. 149, 151 n. 1, 562 S.E.2d 347, 348 n. 1 (2002).

[3] Code § 19.2-254 provides that "[w]ith the approval of the court and the consent of the Commonwealth, a defendant may enter a conditional plea of guilty in a felony case, reserving the right, on appeal from the judgment, to a review of the adverse determination of any specified pretrial motion."

rather than an "Alford" plea, and that he therefore, properly preserved his questions presented on appeal.

In its brief on appeal, the Commonwealth concedes that Askew "in fact conditionally pled guilty pursuant to Code § 19.2-254, and thus may properly raise his suppression hearing issues on appeal." Accordingly, and because the record arguably supports this position, we assume, without deciding, that Askew properly preserved the suppression issues for appeal, and we proceed to the merits of Askew's appeal. See McLean v. Commonwealth, 30 Va. App. 322, 331, 516 S.E.2d 717, 721 (1999) ("'The purpose of Rule 5A:18 is to provide the trial court with the opportunity to remedy any error so that an appeal is not necessary.'" (quoting Knight v. Commonwealth, 18 Va. App. 207, 216, 443 S.E.2d 165, 170 (1994))); see also Campbell v. Commonwealth, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991) ("It is sufficient, however, if 'at the time the ruling or order of the court is made or sought, [a party] makes known to the court the action which he desires the court to take or his objections to the actions of the court and his grounds therefor.'" (quoting Code § 8.01-384)).

We begin our analysis by recognizing that on an appeal of a trial court's denial of a motion to suppress:

> [T]he burden is on the appellant to show that the trial court's decision constituted reversible error. [This Court views] the evidence in the light most favorable to the prevailing party granting to it all reasonable inferences deducible therefrom. [This Court will] review the trial court's findings of historical fact only for "clear error," but [this Court reviews] *de novo* the trial court's application of defined legal standards to the particular facts of a case, such as determinations of reasonable suspicion and probable cause.

Quinn v. Commonwealth, 25 Va. App. 702, 712, 492 S.E.2d 470, 475-76 (1997).

We do not, however, consider the merits of Askew's first argument on appeal, contending that the trial court erred in denying his motion to suppress his confession. The record reflects

that Askew's trial attorney made an oral motion before the trial court, requesting the trial court to suppress the confession. At a hearing, Askew produced evidence concerning the circumstances surrounding the confession. Nonetheless, Askew failed to raise below the specific argument he now raises on appeal. Specifically, the record reflects that although Askew asked the trial court to suppress his confession, and although he put on evidence concerning the circumstances under which the confession was made, Askew failed to make any argument to the trial court concerning the lawfulness of the attendant police actions. Instead, Askew's trial attorney merely "submit[ted]" the matter on the evidence and gave no indication of the violation of law requiring suppression.

Askew's bare assertion, in the form of his oral motion to suppress, that the "alleged confession given by [Askew] to representatives of the Hampton Police Department" should be excluded, is insufficient to preserve the issue for purposes of appeal. See Rule 5A:18; see also McLean, 30 Va. App. at 333, 576 S.E.2d at 722 (finding that "nothing" in a defendant's mere assertion that the Commonwealth's proffered instruction was "unclear and improper" preserved an issue for appeal). Indeed, it is fundamental that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ." Rule 5A:18. "'The main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" Ohree v. Commonwealth, 26 Va. App. 299, 307, 494 S.E.2d 484, 488 (1998) (quoting Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991)). When specific objections have not been made, this Court will not consider an argument on appeal which was not presented to the trial court. Ohree, 26 Va. App. at 308, 494 S.E.2d at 488. This rule applies with equal force to constitutional claims. Id.

Turning to Askew's next contention, we recognize that:

> The fourth amendment protects individuals against illegal searches and seizures by the government. However, the rights guaranteed under the fourth amendment are personal rights that may not be vicariously asserted. <u>Rakas v. Illinois</u>, 439 U.S. 128, 133-34 (1978). Also, the fourth amendment "protects people, not places." <u>Katz v. United States</u>, 389 U.S. 347, 351 (1967). . . . [T]he protections of the exclusionary rule are only available to individuals whose fourth amendment rights have been violated. <u>Rakas</u>, 439 U.S. at 134; <u>accord</u> <u>United States v. Salvucci</u>, 448 U.S. 83, 85 (1980); <u>McCoy v. Commonwealth</u>, 2 Va. App. 309, 311, 343 S.E.2d 383, 385 (1986). Thus, before affording the exclusionary rule protections to a defendant, a court must determine whether, based on the totality of the circumstances, the defendant "objectively had a reasonable expectation of privacy at the time and place of the disputed search." <u>McCoy</u>, 2 Va. App. at 311, 343 S.E.2d at 385.

<u>Commonwealth v. Ealy</u>, 12 Va. App. 744, 750-51, 407 S.E.2d 681, 685 (1991). Although Askew correctly notes that warrantless entries and searches of dwellings are presumptively unreasonable and cast upon the prosecution the burden of justifying such a search, <u>Welsh v. Wisconsin</u>, 466 U.S. 740, 749-50 (1984), that burden arises "only if the defendant demonstrates *his* Fourth Amendment rights were violated by the challenged search or seizure." <u>United States v. Padilla</u>, 508 U.S. 77, 81 (1993) (emphasis in original). Thus, the person who claims protection of the Fourth Amendment first bears the burden of demonstrating a legitimate expectation of privacy in the place searched. <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 104 (1980).

The United States Supreme Court has held that the Fourth Amendment protects the curtilage of a house. <u>United States v. Dunn</u>, 480 U.S. 294, 300-02 (1987). However, the Supreme Court has also held that the Fourth Amendment does not protect a person's "trash, left for collection in an area accessible to the public," because the person no longer has a reasonable expectation of privacy in such items. <u>California v. Greenwood</u>, 486 U.S. 35, 41 (1988).

Askew presented no evidence on this issue at the suppression hearing. Instead, his trial attorney proffered:

> If the Court please, there was one other matter that I feel that we can do by stipulation or proffer as opposed to having to put evidence on and bring officers here from other cities. That deals with the question on – and I ask the Commonwealth to jump in and correct me if I misstate anything in this proffer.
>
> On March the 8th of 1999, the day before the conversations with Mr. Askew, with the two detectives who discussed this matter with him, and who have appeared in this court today; two detectives came from Newport News, came to a location known as 1043 28th Street, in the City of Newport News. Those two detectives were armed with a search warrant, and approached a lady by the name of Elsie Whitaker. Ms. Whitaker – they asked about – excuse me.
>
> (Counsel and [Askew] confer.)
>
> * * * * * * *
>
> I misspoke. If the Court please, there was no search warrant. Two detectives came and spoke to Elsie Whitaker who resided at that address. That address is a rooming house that has three or four different rooms or apartments in it. That those detectives asked Ms. Whitaker if they could search the premises, and she gave consent. It is –
>
> (Counsel and [Askew] confer.)
>
> Okay. Mr. Askew advises me that she did not give consent. That they proceeded to search a trash can that was located outside of the house, beside the house. Not at the street area, but beside the house. And in that trash can, found a bebe [sic] gun and some form of mask. And there was no notice or consent requested or given by Mr. Askew who, prior to his being arrested on the PB-15 the day before, the day or so before, had resided at that premises.
>
> Mr. Askew's request is that since he was not asked concerning consent to search, and since there was no search warrant, would ask that the bebe [sic] pistol and mask recovered from the trash can outside of that premises, on the side of that premises, be suppressed as not having a proper foundation to be introduced into evidence against him.[4]

---

[4] In response to questioning by the trial court, Askew proffered that Ms. Whitaker was not the owner of the rooming house, but merely a "resident."

In response, the Commonwealth refused to concede that consent was not obtained, and also took the position that Askew, in any event, possessed no expectation of privacy in the items "recovered outside of the residence, discarded trash, abandoned." Thus, the Commonwealth contended Askew failed to make the requisite showing of standing necessary to assert such a claim.

Askew argues in his brief on appeal that the trash can in which the contraband was found was on the curtilage of his rooming house and, thus, was not in an "area accessible to the public." Id. In support of this argument, Askew points to his "unrebutted" proffer to the trial court that the trash can was located "beside the house."

The Supreme Court of Virginia has recognized that a "unilateral avowal of counsel, if unchallenged, or a mutual stipulation of the testimony expected constitutes a proper proffer, and that absent such acquiescence or stipulation, this Court will not consider an error assigned to the rejection of testimony unless such testimony has been given in the absence of the jury and made a part of the record in the manner prescribed by the Rules of Court." Whittaker v. Commonwealth, 217 Va. 966, 969, 234 S.E.2d 79, 81 (1977). However, given the response from the Commonwealth to Askew's proffer, we do not accept Askew's suggestion that his proffer was unchallenged by the Commonwealth.

We further reject Askew's contention that his proffer constituted "evidence," much less evidence sufficient to carry his burden below. Indeed, a determination of the extent of curtilage is generally determined by four factors: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Dunn, 480 U.S. at 301-02.

> We do not suggest that combining these factors produces a finely
> tuned formula that, when mechanically applied, yields a "correct"

- 7 -

answer to all extent-of-curtilage questions. Rather, these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration — whether the area in question is so intimately tied to the home itself that it should be placed under the home's "umbrella" of Fourth Amendment protection.

Id. Here, although Askew made a general proffer that the trash can was "beside" the house, he presented no evidence concerning the proximity of the trash can to the house, nor the nature of the area surrounding the trash can. Accordingly, and assuming without deciding that Askew would have had an expectation of privacy in the curtilage of the rooming house, the trial court was presented with no evidence from which it could make a determination that the trash can was within the curtilage of the house.

Based upon the foregoing, we affirm the judgment of the trial court.

Affirmed