# Richmond.

## V. S. WILIIAMS v. COMMONWEALTH.

January 16, 1930.

Absent, Chichester and Epes, JJ.

The opinion states the case.

*W. R. Ashburn*, for the plaintiff in error.

*John R. Saunders, Attorney-General*, and *Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General*, for the Commonwealth.

PRENTIS, C. J., delivered the opinion of the court.

The accused, V. S. Williams, has been sentenced to two years confinement in the penitentiary as though found guilty, under the maiming statute (Code, section 4402), of unlawfully wounding M. R. Young, with intent to maim, disfigure, disable and kill. Whether the verdict justifies the sentence is the fundamental question raised.

These are among the facts shown by the evidence: The accused, Williams, was a special police officer in Princess Anne county. Two automobiles had been in collision on the highway, and in response to a summons he was there, by virtue of his office, in charge of the wrecks. M. R. Young, operating an automobile repair shop, went to the scene of the wreck. There had been some bad feeling between the two men for several years. When Young (with his mechanic, Swindell) came there with the hope of taking the wrecked automobiles, presumably for repair, he was told by Williams that he as an officer was in charge, and that he could not get them. During the interview Young asked the owner of one of the cars whether he could take it, and was told that he could not. Young then drove up the road, which was narrow, to turn his vehicle, saying to his mechanic, Swindell, that there was nothing for them to do except to go home, but when he came back he stopped and renewed his verbal controversy with Williams. His own statement of his reason for doing

so, showing that he was at fault and looking for trouble, is thus stated by him: "I told you I wanted to tell him how dirty he had been doing and that I was getting tired of it, and that I knew a few things myself." There was much coarse, profane and insulting language—not all of such language as is unfit to print, but certainly a great deal of it.

In the second interview he substantially accused Williams of violating the laws against trafficking in intoxicating liquors, of being "crooked," and threatened to expose him to the next grand jury.

According to the testimony for the defense, given by five of the six disinterested bystanders, the accused shot while Young was advancing upon him, having just threatened to beat his brains out. Williams, the accused, testified that he directed his pistol downward so as not to inflict a mortal wound. The location of the wound and its slightly downward course from the crotch in front to the back of the leg, a few inches below the hip joint, confirms this. At the time of the shot Young was advancing upon him and violently threatening to attack him.

The substantial conflict in the testimony comes from Young and Swindell, and is as to the precise location of the shooting, they saying that it occurred about seventy-five or 100 yards away from where all the other bystanders said that the affray occurred, and that Williams, the accused, shot without justification or excuse. There is, however, much in Swindell's testimony confirming the testimony of the other bystanders, and it is shown that his statements under oath on a previous occasion, at the preliminary examination before a justice of the peace, differed in some respects from his statements at this trial. It is also shown by

two witnesses without contradiction, that Swindell has a bad reputation for veracity and is unworthy of belief.

The jury returned a verdict in this language: "We, the jurie, find the accused guilty of unjestiful assault, and fix his punishment at two years in the penitentiary. W. E. Wood."

The judge certifies that "the said indictment, with the verdict thereon, was handed to the judge by the clerk and the judge inspecting the same at a night session of the court, in a poorly lighted court room, took the word 'unjestiful' to be the word 'unlawful,' and was by the judge, without reading same aloud, amended in the following particulars, to-wit, by the insertion of the following language after the word 'assault,' to-wit, 'as charged in the indictment,' and by the addition of the word 'Foreman,' after the signature of W. E. Wood, and the said indictment, with the verdict thereon, was then returned to the clerk by the judge, the accused was commanded to stand, and the verdict was read aloud in the following language, to-wit:

" 'We, the jurie, find the accused gilty of unlawful assault as charged in the indictment, and fix his punishment at two years in the penitentiary. W. E. Wood, Foreman.'

"And the court then called the attention of the jury to said amendment and inquired of the jury whether they and each of them accepted as their verdict the amended verdict as read to them by said clerk, to which each, without being formally polled, indicated his assent and so as amended the judge announced that said amended verdict would be so received by the court as their verdict. And the said verdict, as read aloud, was directed to be recorded, without inspection, but in the presence of counsel for the accused."

Whereupon, the attorney for the accused moved the court to set aside the verdict and grant him a new trial upon several grounds, one of which was that the verdict is void and no judgment can be entered thereon.

The accused was indicted under the maiming act, Code, section 4402, and the indictment charged that he "in and upon one M. R. Young unlawfully, feloniously and maliciously did make an assault and him the said M. R. Young unlawfully, feloniously and maliciously did wound with intent him, the said M. R. Young then and there to maim, disable, disfigure and kill * * *." Under this indictment, it will be conceded that the accused could be found guilty of any felony or misdemeanor substantially charged therein—that is, he could be convicted of (a) malicious wounding with intent to maim, disable, disfigure and kill, (b) of unlawful wounding with the same intent, or (c) of simple assault and battery. Each of these crimes was charged in the indictment.

In *Marshall* v. *Commonwealth*, 5 Gratt. (46 Va.) 663, under an indictment charging similar crimes, but in two counts, the jury returned a verdict finding the accused "not guilty under the first count of the indictment, but guilty of unlawful stabbing," and it was held that the verdict was insufficient to support a judgment under the second count, evidently because it failed to find the intent which is an essential element of the crime, and directed a new trial.

In *Randall* v. *Commonwealth*, 24 Gratt. (65 Va.) 644, under an indictment under the maiming act, the jury found the prisoner guilty of "malicious shooting," (without naming the person shot), and fixed his term in the penitentiary at five years; but it was held that "malicious shooting," merely, is "no offense at all,"

and that no judgment could be entered upon that verdict. *State* v. *Newsom*, 13 W. Va. 859, is to the same effect.

In the later case of *Hoback* v. *Commonwealth*, 28 Gratt. (69 Va.) 922, under a similar indictment, the verdict read: "We the jury find the defendant, Hoback, not guilty of malicious shooting, as in the within indictment charged, but guilty of unlawful shooting with the intent to maim, disfigure and kill, and fix his term of confinement in the penitentiary at two years." It was held that the verdict should be read in connection with the indictment, and that the indictment sufficiently indicated the person who was shot.

In *Stuart* v. *Commonwealth*, 28 Gratt. (69 Va.) 950, an indictment under the maiming act, the jury found a verdict in these words: "We, of the jury, find the defendant guilty of the unlawful assault and fix the term of his imprisonment in the State penitentiary for two years." He was granted a new trial and upon the second trial he was found guilty of "malicious assault, with intent to maim, disfigure, disable and kill," and his term was fixed at five years. The court held in that case that the first verdict was invalid because it found him guilty of a misdemeanor only, but annexed a punishment as for a felony. It further held that the first verdict was an acquittal both of unlawful and malicious assault and wounding with intent to maim, disfigure, disable and kill, and that thereafter he could only be tried for the misdemeanor.

The first verdict in that case is quite similar to the verdict in this case.

This court will go far in sustaining the trial court judges when they undertake to reform defective verdicts in the presence of the jury and before they are discharged. It is their duty to do so as to matters of

form. It is also clearly their duty to see that the jury is not discharged upon the return of an illegal verdict. In such event they should be properly instructed and not discharged (except for some other good reason) until they have found and returned a legal verdict upon which the appropriate judgment can be based. This court will also go far in the disregard of defects in verdicts which have been accepted by the trial courts, but from which, notwithstanding such defects, the real finding of the jury may be determined, though it may not be accurately couched in the technical language of the law. It is always necessary, however, before a judgment can be entered upon a verdict, that it appear just what the jury found or intended to find. *Winn Bros.* v. *Lipscomb*, 127 Va. 560, 103 S. E. 623; *Fields* v. *Commonwealth*, 129 Va. 780, 106 S. E. 333; *Pflaster* v. *Commonwealth*, 149 Va. 461, 141 S. E. 115.

██ ██ Scrutinizing this verdict, then, both before amendment by the court and afterwards, we are unable to determine the crime of which the jury intended to find the accused guilty. If properly charged when empaneled, they were told that the accused could be found guilty of simple assault and battery, and also that they could not impose a penitentiary sentence unless they found him guilty of malicious or unlawful wounding with intent to maim, disfigure, disable or kill. So much of this verdict as finds that he is guilty of "unjestiful assault" may be fairly construed as a finding that he was guilty of unlawful assault—that is, of simple assault and battery; but the concluding clause of the verdict in which they fix his punishment at two years imprisonment in the penitentiary contradicts this finding of simple assault and suggests that they found that he had been guilty either of unlawful or of malicious wounding with intent, etc. The two clauses

of the verdict cannot be reconciled. The punishment as for a felony is inconsistent with the finding that he was guilty of a misdemeanor.

When the judge undertook to perform his duty to correct the verdict, he simply inserted the words, "as charged in the indictment." This interlineation did not clarify the obscurity in the verdict to which we have referred. Simple assault and battery was as clearly charged in the indictment as were the felonious, malicious and unlawful assault and wounding, with intent to maim, etc., under the maiming act. The verdict was as uncertain after the amendment as it was before. We cannot find light because there is no light.

When we examine the evidence (and this we should always do before we adjudge an apparent error to be either harmful or harmless), we find little to support a conviction of felony, and therefore the sentence of the accused, as though he had been found guilty of a felony, based upon the faulty verdict, is held to be a harmful error.

As we are unable to determine from the verdict and this record whether the jury intended to find the accused guilty of a misdemeanor or a felony, and as he has been sentenced as though he had been found guilty of a felony by the jury, the judgment is erroneous and will be set aside.

There are other assignments of error as to the instructions which were given to the jury, but inasmuch as there is little doubt as to how a jury should be instructed in such a case, and as the errors, if any, which were inadvertently committed, will hardly be repeated, we do not think it necessary to prolong this opinion.

The judgment will be reversed because of the defective verdict and illegal sentence, and the case remanded for such further proceedings as may be appropriate.

*Reversed.*