## Richmond

## KENNETH DAVID SPEAR

### V.

## COMMONWEALTH OF VIRGINIA

October 10, 1980.

Record No. 791359.

Present: All the Justices.

*Gordon H. Shapiro; Jonathan S. Kurtin (Harvey S. Lutins; Lutins, Shapiro and Albert,* on brief), for appellant.

*Robert H. Anderson, III, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

HARRISON, J., delivered the opinion of the Court.

Kenneth David Spear was tried on an indictment which charged that he "unlawfully and feloniously did manufacture with intent to distribute a controlled substance, to wit: methamphetamine, a Schedule I controlled substance." Virginia Code § 18.2-248. He was found guilty

and sentenced to serve a term of ten years in the penitentiary and to pay a fine of $10,000. The verdict returned by the jury reads, in pertinent part, as follows: "We, the jury, on the issue joined, find the defendant, Kenneth David Spear, guilty of manufacturing methamphetamine, or possession of methamphetamine with intent to manufacture methamphetamine, a Schedule II controlled drug, as charged in the indictment. . . ."[1]

The defendant claims that the court below erred in entering judgment upon the verdict of the jury which he alleges was fatally defective, and in giving the following instruction:

## INSTRUCTION NO. 1

THE COURT INSTRUCTS THE JURY that if you believe from the evidence beyond a reasonable doubt that the defendant, Kenneth David Spear, manufactured methamphetamine, a Schedule II controlled drug, or possessed methamphetamine with the intent to manufacture, then you shall find him guilty and fix his punishment at confinement in the penitentiary for a period of not less than five nor more than forty years, and by a fine of not more than $25,000.

The evidence establishes, as defendant concedes, that he illegally manufactured methamphetamine. The defendant also admits that the Commonwealth introduced sufficient evidence to sustain a conviction of the possession by him of methamphetamine with intent to manufacture. Spear contends, however, that it cannot be determined from a reading of the jury's verdict whether he was convicted of manufacturing methamphetamine or possession with intent to manufacture. He says that the jury may not have been unanimous and that he may have been convicted with some jurors finding that he was guilty of manufacturing and others finding that he was guilty of possession with the intent to manufacture.

The Commonwealth argues that the instruction did not permit the jury to convict Spear of either of two entirely separate crimes. The language of the instruction mirrors the language of Code § 18.2-248, and the punishment given was consistent only with that section. Manufacturing and possession with intent to manufacture methamphetamine are offenses prohibited by the same code section. The verdict of the jury was returned on a form supplied by the trial court, and it fol-

---

[1] Methamphetamine is, in fact, a Schedule II controlled drug. Both Schedules I and II controlled drugs carry the same penalties under Code § 18.2-248.

lowed the language of the statute and the quoted instruction. The jury had before it three alternative verdict forms: (1) not guilty, (2) guilty of the possession of methamphetamine, and (3) guilty of "manufacturing methamphetamine, or possession of methamphetamine with intent to manufacture."

It is clear that the defendant was on trial for manufacturing methamphetamine. The entire thrust of the Commonwealth's case was to establish that fact. The Commonwealth's Attorney so stated in his opening statement and in his closing argument to the jury. The defendant was kept under surveillance by law enforcement officers for several months prior to the search of his home and his arrest. Large quantities of chemical shipments were sent to and received by the defendant at various addresses. Only one day prior to his arrest defendant received 2,000 grams of phenylacetone, or "P-2-P", a necessary element in the manufacturing of methamphetamine. This compound was sent to a nonexistent company but was signed for and received by a tenant of the defendant and delivered by her to Spear. Defendant had an arrangement with tenants in his apartments to receive shipments when he was not present, for which he paid them small amounts of money. One tenant related a conversation she had with Spear in which he commented "how easy it would be to make" methamphetamine. She testified that she later received a sample of the drug from defendant who advised her to try it out, and who told her that if she could get rid of it for him she could have anything in excess of $500 an ounce. When the premises of defendant were searched numerous chemicals, reagents, scales, flasks, paraphernalia, and objects normally used in laboratories were found in the kitchen area.[2] The items found included books dealing with chemicals and chemical reactions. A chemist for the State Bureau of Forensic Science, who accompanied the officers during the search, testified to finding 15 grams of methamphetamine in various utensils and objects in the kitchen. The chemist also found in a cabinet notes from which he was able to produce methamphetamine. He said:

[T]he necessary components were there to make it and I found the product there. I did not find a reaction in progress at the time we entered. But I found what the normal clean-up procedures would be going on after such reaction.

---

[2] Among the various chemicals found were: methanol, phenylacetyl, chloride, cadmium chloride, sodium cyanoborohydride, benzyl alcohol, phenylacetone [P-2-P], toluene, Mannitol, sodium hydroxide, monymethylamine, aluminum chloride, acetic anhydride chloroacetone, hydrochloric acid, and methamphetamine.

The defendant claimed that his long interest in methamphetamine had been triggered by the death of his first wife, which he attributed to that drug. His explanation for the drug found in his home was that it had been given to him by a friend who desired him to analyze it to see whether it was in fact methamphetamine. The jury obviously did not accept this explanation.

■ Every person accused of the commission of a crime and brought into court as a defendant has the right to demand and to be told in plain language the complaint against him, and where intent is an element of the crime charged, it must be set out in the indictment. We find no fatal defect in the indictment in the instant case. Although it charged that the defendant manufactured a controlled substance *with the intent to distribute,* the intent of the defendant to distribute was not an element of the crime of manufacturing, and its allegation was surplusage. The court properly made no reference to an intent to distribute in either its Instruction No. 1 or the suggested form verdict which the jury followed.

■ In determining the validity of a jury's verdict, it is necessary to discern the true intent of the jury. A verdict must demonstrate what a jury found or intended to find, and it is always to be read in connection with the indictment. If a verdict is otherwise proper it is not rendered void simply because it may contain unnecessary language or surplusage. We disregard technical irregularities in a verdict where the jury's finding is otherwise clear. In *Williams* v. *Commonwealth,* 153 Va. 987, 994, 151 S.E. 151, 153 (1930), we stated that the court would "go far in the disregard of defects in verdicts which have been accepted by the trial courts, but from which, notwithstanding such defects, the real finding of the jury may be determined, though it may not be accurately couched in the technical language of the law." *See also Jackson* v. *Commonwealth,* 218 Va. 490, 237 S.E.2d 791 (1977).

■ The verdict of the jury in this case is couched in the technical language of Code § 18.2-248 and follows specifically the language of the instruction of the court. The Commonwealth introduced a great volume of evidence showing the defendant's *modus operandi,* his acquisition of the necessary ingredients to make the drug, his possession of the required equipment, and his arrangement for the sale of the drug after manufacture. Spear's defense was that he was not a manufacturer, but rather the innocent possessor of methamphetamine, an offense prohibited by Code § 18.2-250. The court instructed the jury that in event it entertained a reasonable doubt as to whether the defendant was guilty of the possession of methamphetamine, or was

guilty of "manufacturing methamphetamine or possession with intent to manufacture," it should find him guilty of possession. Thus, the trial court treated manufacturing and possession with intent to manufacture as one and the same offense, and possession as a lesser included offense.

Code § 18.2-248 provides, in pertinent part, that "it shall be unlawful for any person to manufacture, sell, give, distribute or possess with intent to manufacture, sell, give or distribute a controlled substance." The penalty for a violation of this section with respect to a controlled substance classified in Schedule I or II is imprisonment for not less than five nor more than forty years and a fine of not more than $25,000. Methamphetamine is a controlled substance classified in Schedule II. Code § 54-524.84:6. The acts prohibited and made unlawful by Code § 18.2-248 are *the manufacture,* the sale, the gift, and the distribution of such substance. The statute likewise prohibits and makes unlawful *the possession* of such substance with *the intent* to manufacture the drug, or to sell it, or to give it, or to distribute it. This statute was obviously designed to make unlawful any trafficking or dealing in controlled substances. Code § 18.2-250 makes it unlawful for any person knowingly or intentionally to possess a controlled substance. The sale, gift, distribution, or possession with intent to sell, give, or distribute marijuana is treated separately in Code § 18.2-248.1.

In *Stillwell et al.* v. *Commonwealth,* 219 Va. 214, 218-19, 247 S.E.2d 360, 363 (1978), we said:

> In its enactment of The Drug Control Act the General Assembly recognized that, except in very rare and most unusual cases, there can be no lawful possession, sale or distribution of drugs by anyone, particularly of those drugs classified in Schedules I, II and III, and listed in Code §§ 54-524.84:4, -84:6, -84:8. With few exceptions, enumerated by statute, no one can lawfully manufacture, possess, sell or distribute such drugs. The manufacture of drugs is strictly controlled and regulated by the state. The possession of drugs is confined to a small group of professionals who are required to dispense the drugs under restricted and controlled conditions. By and large, it can be said that the lawful possession of drugs is restricted to licensed manufacturers, licensed pharmacists, and to individuals who have possession as a result of a prescription given by an authorized physician.

The difficulty here stems from the language found both in the court's instruction and in the form provided for the verdict of the jury.

It permitted the jury to find that the defendant "manufactured methamphetamine . . . *or* possessed methamphetamine with the intent to manufacture" methamphetamine. (Emphasis added.) Spear was indicted and prosecuted for the unlawful manufacture of methamphetamine. What he intended to do with the drug was immaterial to his conviction of manufacturing or to his punishment for that offense. The General Assembly, in its effort to prohibit any manufacturing, sale, or distribution of certain drugs, prohibited not only the manufacture of the drug, but the possession of the drug with intent to manufacture. Unlike Code § 18.2-250, which concerns mere possession, Code § 18.2-248 is designed to make unlawful the possession of a controlled substance by one who possesses it with the *intent* to manufacture a like controlled substance or another controlled substance.

The reliance by the Commonwealth on *Stillwell et al.* v. *Commonwealth, supra,* is misplaced. The prosecutions in *Stillwell* occurred in 1976, and before the extensive amendments were made to Code § 18.2-248, deleting all references to marijuana and other Schedule III drugs. The defendants there were convicted of three separate offenses of selling marijuana to an undercover police officer. They contended that Code § 18.2-248(a) created two distinct offenses involving the sale of marijuana: (1) the distribution, sale, gift, manufacture (or possession with the intent to distribute, sell, give, or manufacture) of marijuana with the intent to profit, and (2) the transfer of marijuana as an accommodation to another individual with no intent to profit. They argued that the first offense was punishable as a felony and required proof that the defendant possessed the intent to profit, whereas the second offense should be treated only as a misdemeanor. It was in this context that we said, in our view, the statute created only a single offense, and that the provisions of the statute which dealt with the reduced penalty conditioned upon proof of accommodation operated only to mitigate the degree of criminality or punishment, rather than to create two different substantive offenses, as defendant contended. We held that § 18.2-248 placed upon the defendant the burden of proving the existence of an accommodation distribution (and the right to the lesser penalty).

The evidence clearly established that Spear manufactured methamphetamine, and it is most unlikely that the jury reached any conclusion other than that. However, the chemist who testified for the Commonwealth said he found on defendant's premises a total of 15 grams of methamphetamine which he removed or scraped from numerous containers. He further testified that while the necessary components were there to make the drug and he found the product, he did

not find "a reaction in progress at the time we entered." What he found was the manufactured drug, together with "the normal clean-up procedures [that] would be going on after such reaction." No instruction was given the jury on what is necessary to constitute "the manufacturing" of a controlled substance. The possibility exists that some members of the jury may have believed that, because "a reaction [was not] in progress" when the officers searched the premises, the defendont could not be found guilty of manufacturing, but could be convicted of possessing the methamphetamine seized, with the intent to manufacture methamphetamine. Obviously the jury did not believe that Spear was merely in possession of a controlled substance. Manufacturing and possession with intent to manufacture are not one and the same. One could purchase a controlled substance from another and have it in his possession together with all the chemicals, ingredients, equipment, and paraphernalia necessary to manufacture that substance, and with the intent to manufacture it at some time in the near or distant future, but still not be guilty of the act of manufacturing.[3]

The fact that both acts are prohibited by the same statute and that the violation of either act carries the same penalty is not material. They are separate acts and, although the intentional possession of methamphetamine is a lesser included offense of manufacturing, the possession of methamphetamine with the intent to manufacture is not.

■ It is our conclusion that the court erred in granting any instruction which permitted the jury to find that the defendant was guilty of any offense other than that of manufacturing a controlled substance, methamphetamine, or the possession thereof, a lesser included offense. Because we are unable to determine from the verdict returned by the jury whether it was unanimous in finding the defendant guilty of manufacturing methamphetamine, the judgment of the trial court will

---

[3] Code § 54-524.2(b)(14a) defines "manufacture" as follows:

"Manufacture" means the production, preparation, propagation, compounding, conversion or processing of any item regulated by this chapter, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, except that this term does not include the preparing, compounding, packaging or labeling of a controlled substance:

(1) By a practitioner as an incident to his administering or dispensing of a controlled substance or marijuana in the course of his professional practice, or

(2) By a practitioner, or by his authorized agent under his supervision, for the purpose of, or as an incident to, research, teaching, or chemical analysis and not for sale.

be reversed and the case remanded for a new trial, if the Commonwealth be so advised.[4]

*Reversed and remanded.*

THOMPSON, J., dissenting.

The majority opinion contains these statements:

> The evidence establishes, as defendant concedes, that he illegally manufactured methamphetamine. . . .
>
> It is clear that the defendant was on trial for manufacturing methamphetamine. The entire thrust of the Commonwealth's case was to establish that fact. The Commonwealth's Attorney so stated in his opening statement and in his closing argument to the jury. . . .
>
> The evidence clearly established that the defendant manufactured methamphetamine, and it is most unlikely that the jury reached any conclusion other than that. . . .

In *Jackson* v. *Commonwealth,* 218 Va. 490, 492, 237 S.E.2d 791 (1977) we said:

> We said in *Williams* v. *Commonwealth,* 153 Va. 987, at 994, 151 S.E. 151, 153 (1930), that if "the real finding of the jury may be determined" we will disregard defects in a verdict which has been approved by the trial court.

Instruction 1 was given by the Court without objection.[1] If there was any doubt in anyone's mind about the true finding of the jury, it could have been corrected before the jury was discharged.[2]

I feel that Spear has failed to comply with Rule 5:21 and that the alleged error is not properly before this court. I would affirm the judgment of the trial court.

---

[4] In event of a further prosecution of the defendant on the indictment which charges him with the unlawful manufacture of a controlled substance, the indictment should be amended by the deletion of the unnecessary language therein. While the intention of the defendant to distribute the drug he was allegedly manufacturing may be reflected from the evidence introduced to establish his guilt of manufacturing, the allegation of such an intent to distribute in the indictment is unnecessary and confusing to a jury.

[1] The record states in pertinent part:

The Court: Mr. Melesco, I have ten instructions and you have read them. Are there any objections to the instructions that the Court intends to give?

Mr. Melesco: We would, of course, object to any instructions on the offense of manufacturing your Honor. We feel that the evidence at the best only bears the case of possession. But otherwise, we have no objection.

[2] The record reveals the following exchange:

The Court: Any motions prior to discharging the jury, Mr. Melesco?

Mr. Melesco: No, your Honor.

THE COURT DISCHARGED THE JURY.