COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Petty and Huff
Argued at Richmond, Virginia

WILLIE HICKS, JR.

OPINION BY
v.        Record No. 1543-18-2          CHIEF JUDGE MARLA GRAFF DECKER
                                        DECEMBER 3, 2019
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
Leslie M. Osborn, Judge

Steven D. Benjamin (Betty Layne DesPortes; Benjamin &
DesPortes, P.C., on briefs), for appellant.[1]

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Willie Hicks, Jr., appeals his convictions for one count each of rape, aggravated sexual

battery, and indecent liberties, in violation of Code §§ 18.2-61, -67.3, and -370.  On appeal, he

asserts that in light of the fact that he stood charged with five counts of rape, the trial court erred

by failing to instruct the jury in a manner that ensured their unanimity regarding which one of the

multiple acts described by the complaining witness had been proved beyond a reasonable doubt.

He also suggests that the court erred by excluding two different types of impeachment evidence.

We hold that the appellant did not preserve his challenge to the unanimity of the jury for appeal.

We further hold that he waived one of his evidentiary claims.  As to his other evidentiary claim,

we conclude that the evidence supports the trial court's finding that he did not establish an

adequate foundation for the admissibility of the excluded testimony.  Consequently, we affirm

the convictions.

---

[1] Appellate counsel did not serve as trial counsel in this case.

## I.  BACKGROUND[2]

The appellant was twenty years old at the time of the offenses.  The victim, Q.A., was his twelve-year-old female cousin.  All offenses occurred during an eleven-day period of time in which the appellant and the victim were both living at a relative's home.

The appellant was tried for taking indecent liberties with a child, aggravated sexual battery, and five counts of rape.  During the trial, the court refused two categories of evidence proffered by the appellant.  It excluded evidence that the victim had genital warts and that she had previously made false accusations of sexual abuse.  The court also refused the appellant's request to label each of the rapes in a different fashion, such as by numbering them.

Following trial, the jury convicted the appellant of one count each of indecent liberties, aggravated sexual battery, and rape.  It acquitted him of the other counts of rape.  He was sentenced to a mandatory term of life in prison for the rape, as well as to one year for aggravated sexual battery and twelve months for indecent liberties.

## II.  ANALYSIS

The appellant challenges the trial court's use of identical jury instructions for the five counts of rape on the ground that they failed to require that the jury was unanimous regarding the rape of which it found him guilty.  He also contests the court's exclusion of evidence concerning a communicable virus and prior false accusations of sexual misconduct.

---

[2] In reviewing a trial court's ruling on a request for clarification of a proposed jury instruction, "we view the evidence in the light most favorable" to the proponent of the clarification, in this case the appellant.  See Landeck v. Commonwealth, 59 Va. App. 744, 759 (2012) (involving a proposed instruction rather than a mere request for clarification) (quoting Commonwealth v. Vaughn, 263 Va. 31, 33 (2002)).  On appellate review of the admissibility of evidence, we view the evidence in the light most favorable to the Commonwealth, the party who prevailed below.  See Lynch v. Commonwealth, 46 Va. App. 342, 345 (2005), aff'd, 272 Va. 204 (2006).

A.  Jury Instructions and Unanimity of Rape Verdict

The appellant argues that the instructions given to the jury permitted it to find him guilty of a single count of rape without requiring that the jurors unanimously agree upon which particular incident supported that conviction.

1.  Relevant Trial Events

The appellant was initially charged with eight counts of rape, each of which covered a different date or range of dates between June 12 and June 23, 2017.

At trial, the victim testified that on or about June 12, the appellant climbed into her bed and put his penis "inside" her vagina.  When the prosecutor asked about "the next time," the victim replied that she was once again "in [her] room" and that "[t]he same thing" happened.  In response to a later inquiry regarding "how many times" the appellant penetrated her between June 12 and 23, the victim responded, "It was . . . more than once, but I don't know exactly how many," and she indicated that each incident occurred "on a different day."  The victim subsequently clarified that the rapes occurred approximately "every other day" and that the appellant raped her a total of five rather than eight times.  She then gave slightly more detailed testimony about the "last time" he raped her.

Following the crimes, the victim reported to police that her clothes hamper contained "three pairs of panties that probably ha[d] semen . . . on them."  The police collected three pairs of her underwear as evidence.  The appellant's DNA was found in seminal fluid located along with the victim's blood in the "interior crotch area" of one of those pairs of underwear.

The appellant testified at trial and denied the allegations.  He admitted, based on the DNA evidence, that the sperm found in the victim's underwear was his.  Nevertheless, he denied

- 3 -

having sexual intercourse with her, claiming instead that he merely put his clothing in the same hamper.[3]

On the prosecutor's motion, the trial court dismissed three of the eight rape indictments because the victim's testimony supported only five rape charges. Also on the prosecutor's motion, the court amended the five rape indictments so that they all contained identical language, each charging the appellant with raping the victim on or about "June 12 through June 23."

Later, during discussion among the parties and the court regarding the jury instructions, the appellant noted the need "to be able to distinguish [among the rape counts] for purposes of appeal." He asserted that "if the jury finds [the appellant] guilty on this [rape] instruction and innocent on this [rape] instruction[,] the question for the Court of Appeals is, is there sufficient evidence to sustain its burden beyond a reasonable doubt on this rape." He consequently argued that the court needed to devise a "way to distinguish each of the charges in the instructions [in order to] keep track on the record what evidence applies to what . . . for purposes of appeal."

The judge inquired, "How am I going to make [the instructions] different?" The appellant replied that he did not know but said that "if [the judge did not] do it[,] the jury could be in the position of going back there and maybe ten of them think rape one happened and two of them think rape three happened." The appellant asked about "how [he would] preserve [an objection]" under those circumstances. The judge replied that all five rape instructions "read exactly the same . . . [with the] date range on them." He observed that he had "done them like that before" and "d[id not] think [he] c[ould] impose a date on the[m]." The appellant reiterated that not having "a way to distinguish" presented a problem. He proposed "call[ing] them rape one, rape two, rape three . . . so that the jury [would] at least [be] talking about the same charge

---

[3] A forensic scientist testified that the seminal fluid found in the victim's underwear was "more than microscopic" and was not "touch" or "trace DNA."

when . . . deliberat[ing]" and the parties and the court "c[ould also] tell which one [was] which." The judge denied the request.

Following closing arguments, the court instructed the jury, "In order to return a verdict[,] each of you must agree upon the verdict." It noted that the jury would receive "a set of verdict forms," including "five verdict forms for rape" "because there are five counts of rape."

One of the three verdicts returned by the jury read as follows: "We, the jury, find the defendant guilty of rape of a child under the age of thirteen while being eighteen years of age or older on or about June 12[,] 2017 through June 23[,] 2017." The jury also convicted the appellant of indecent liberties and aggravated sexual battery. It acquitted him of the remaining four rapes. The judge then said to the jury, "[A]s we told you before, this verdict has to be a unanimous verdict." He polled the jury regarding the verdict, and each juror responded, "Yes," when asked if it was his or her verdict.

Counsel for the appellant noted his intent to file "a motion to strike the guilty verdict" because "we don't know what rape they convicted him of," but he did not argue that the record failed to prove that the single rape verdict was unanimous. Additionally, although the appellant filed a written motion to set aside the verdict, the motion and the accompanying argument also did not challenge the rape verdict on unanimity grounds. The trial court denied the motion.

2. Juror Unanimity Regarding Offense and Preservation for Appeal

The appellant argues that the trial court's instructions to the jury failed to require that the verdict on the rape charge was unanimous.[4]

The Virginia Constitution mandates that an accused in a criminal prosecution "shall enjoy the right to a speedy and public trial, by an impartial jury . . . , without whose *unanimous* consent

---

[4] The appellant does not dispute the principle that the time of commission of a sexual offense against a child is "not the essence of the offense." See Farhoumand v. Commonwealth, 288 Va. 338, 351-52 (2014) (quoting Code § 19.2-226(6)).

- 5 -

he cannot be found guilty." Va. Const. art 1, § 8 (emphasis added); see Rule 3A:17(a).

Virginia's appellate courts have addressed this unanimity requirement in various contexts. Compare, e.g., Spear v. Commonwealth, 221 Va. 450, 457-58 (1980) (reversing the defendant's conviction where a single instruction permitted the jury to find him guilty on the theory that he committed either of two different offenses and, consequently, the Court could not determine "whether [the jury] was unanimous in finding [him] guilty of" the offense charged), with Prieto v. Commonwealth, 283 Va. 149, 179-81 (2012) (holding in a capital case that as long as the jury unanimously found that the evidence was sufficient to support the aggravating factor of vileness, it was not required to agree upon which one of multiple possible categories of evidence proved that vileness (citing Jackson v. Commonwealth, 266 Va. 423, 434-35 (2003))).

The appellant argues that the unanimity requirement compelled the trial court to adopt his proposed method of numbering the rapes or, alternatively, to devise another way for the jury to distinguish among the five charged rapes about which it was asked to deliberate. He contends that such action was necessary to ensure that any verdict convicting him of rape involved the same single rape. The appellant suggests that the instructions given by the trial court were inadequate and "allowed for a non-unanimous verdict." The Commonwealth asserts that the appellant did not adequately preserve the juror unanimity issue for appeal.

Rule 5A:18 provides in pertinent part that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." This rule applies even to constitutional claims. See Arrington v. Commonwealth, 53 Va. App. 635, 641 (2009).

Of critical importance in this case is the principle that "[n]ot just any objection will do." Thomas v. Commonwealth, 44 Va. App. 741, 750, adopted upon reh'g en banc, 45 Va. App. 811

(2005). Instead, "[s]pecificity and timeliness undergird the contemporaneous-objection rule . . . 'so that the trial judge . . . know[s] the particular point being made in time to do something about it.'" Bethea v. Commonwealth, ___ Va. ___, ___ (Aug. 28, 2019) (quoting Dickerson v. Commonwealth, 58 Va. App. 351, 356 (2011)). The rule is designed to prevent unnecessary appeals by permitting the resolution of the objection in the trial court, "either because the trial court intervenes with a corrective ruling that accommodates the asserted interests of both sides or because opposing counsel gives a winning explanation that moots the objection altogether." Id. at ___. Consequently, "[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review." Johnson v. Commonwealth, 58 Va. App. 625, 637 (2011) (quoting Edwards v. Commonwealth, 41 Va. App. 752, 760 (2003) (*en banc*), aff'd by unpub'd order, No. 040019 (Va. Oct. 15, 2004)).

In short, Rule 5A:18 requires a litigant to articulate an objection with specificity "so that the trial judge . . . know[s] the *particular* point being made in time to do something about it." Thomas, 44 Va. App. at 750 (emphasis added); see Edwards, 41 Va. App. at 760. Although the party need not cite specific authority, such as a particular statute or constitutional provision, to the trial court in order to rely on it on appeal, he must present the objection itself with sufficient particularity to permit the judge, if he agrees, to take necessary action. See Byrd v. Commonwealth, 50 Va. App. 542, 549 (2007) (citing Lash v. Cty. of Henrico, 14 Va. App. 926, 929 (1992) (*en banc*)).

In the appellant's case, the only clear basis for his objection to the wording of the rape instructions was that "if the jury finds [the appellant] guilty on this [rape] instruction and innocent on [another rape] instruction[,] the question for the Court of Appeals is, is there sufficient evidence to sustain [the Commonwealth's] burden beyond a reasonable doubt on this rape." The appellant's focus was on whether the evidence was sufficient to support the potential

rape convictions and how he would be able to challenge any such convictions on appeal if he was unable to discern which guilty verdict form related to which incident.

It is true that the appellant also argued that if the instructions did not distinguish among the rape charges in some way, "the jury could be in the position of going back there and maybe ten of them think rape one happened and two of them think rape three happened." He further proposed amending the instructions to distinguish the rape counts by numbering them, "so that the jury is . . . talking about the same charge when they're . . . deliberat[ing] and . . . we can tell which one is which." However, he proposed these amendments in the context of his articulated concern over how he would preserve a challenge to the sufficiency of the evidence. The trial court ruled on that specific objection.

The appellant made no mention of the constitutional requirement that a jury verdict must be unanimous, and he alluded to it in only the most general of terms. Cf. Molina v. Commonwealth, 272 Va. 666, 672-73 (2006) (holding that the defendant waived the right to challenge his conviction on juror unanimity grounds because he did not argue "prior to submission of the instruction to the jury" that it would permit conviction on "a less than unanimous finding . . . concerning the method employed to commit the crime"). Further, after the instructions and the parties' closing arguments, when the judge additionally advised the jury that "each of [them had to] agree upon the verdict," the appellant did not object to the wording of that instruction or ask the court to elaborate that the principle applied to each individual rape charge. Consequently, the record does not support the conclusion that the trial court or the prosecutor, both of whom were entitled to an opportunity to respond to the appellant's concern, understood the nature of his objection as involving the unanimous verdict requirement. See generally Lee v. Lee, 12 Va. App. 512, 516 (1991) (*en banc*) (noting that it is an appellant's burden to present a record adequate to show that he preserved his assignment of error).

Finally, here, no appealable unanimity issue would have existed if the jury had convicted the appellant of all five rapes. Thus, in this case, the issue fully ripened only after the jury returned the single verdict of guilty on one of the five undifferentiated rape charges. Nevertheless, the appellant also did not object on unanimity grounds at that point in time, when the judge might have polled the jury specifically to determine if they were in agreement regarding which particular rape supported their verdict. See Singleton v. Commonwealth, 14 Va. App. 947, 950 (1992) (noting that a unanimity objection was waived when not raised "during the poll of the jury or before its discharge").[5]

Accordingly, the appellant failed to preserve this issue for appeal. Consequently, we conclude that Rule 5A:18 bars this assignment of error.[6]

### B. Exclusion of Evidence of Communicable Virus

The appellant next argues that the trial court erred by excluding evidence that the complaining witness had genital warts and he did not.

---

[5] "It is elementary that a jury must be informed as to the essential elements of the offense [because] a correct statement of the law is one of the 'essentials of a fair trial.'" Burlile v. Commonwealth, 32 Va. App. 796, 800 (2000) (quoting Darnell v. Commonwealth, 6 Va. App. 485, 488 (1988)), aff'd, 261 Va. 501 (2001). As a corollary to this principle, the trial court has an affirmative duty to correct a proffered instruction when it improperly states the law and the legal principle involved is "vital" to a criminal defendant. See, e.g., Jimenez v. Commonwealth, 241 Va. 244, 250-51 (1991) (quoting Whaley v. Commonwealth, 214 Va. 353, 355-56 (1973)). Here, however, to the extent that the appellant's request to the judge to number the rapes may be construed as proffering instructions that implicated this duty of the court, the appellant proffered these "instructions" specifically only in relation to his concern regarding the sufficiency of the evidence, not in relation to the unanimous jury requirement. No sufficiency challenge has been raised on appeal. Further, the court adequately addressed the requirement of unanimous verdicts, absent a specific objection by the appellant, by (1) instructing the jury before it deliberated that "[i]n order to return a verdict[,] each of [them had to] agree upon the verdict," (2) reminding the jury afterward that its "verdict ha[d] to be a unanimous verdict," and (3) individually polling the jurors to assure that it was in fact the verdict of "each of" them.

[6] Rule 5A:18 contains both a good-cause and ends-of-justice exception. However, the appellant does not contend that either exception to Rule 5A:18 applies, and this Court does not raise those exceptions *sua sponte*. See Edwards, 41 Va. App. at 761, cited with approval in Jones v. Commonwealth, 293 Va. 29, 39 n.5 (2017).

## 1. Relevant Trial Events

At trial, the Commonwealth called Emily Horne, a pediatric nurse practitioner. Horne testified that she specialized in the examination and treatment of physical and sexual abuse of children. She examined the victim about a month after the reported abuse. On cross-examination, the appellant asked Horne if she "look[ed] for" sexually transmitted diseases during her examination of the victim, and Horne replied that she did. The prosecutor objected on "rape shield" grounds.

Outside the presence of the jury, the prosecutor argued that although the evidence might have been admissible, the appellant failed to comply with the requirement in Code § 18.2-67.7(C) that the issue "need[ed] to be [raised] in a pretrial hearing." Instead of responding to the prosecutor's assertion that he failed to raise the issue prior to offering the evidence, counsel for the appellant merely contended that this evidence was admissible as "an exception" to the rape shield statute. When the trial court expressly asked why the appellant was not required to make a motion under the rape shield statute before trial to permit resolution of the admissibility question, counsel for the appellant provided a non-responsive answer.[7] He then asked to "question [the witness] outside [the presence of] the jury to preserve [the] record," which the court permitted. The court ultimately sustained the Commonwealth's objection to the testimony, ruling in pertinent part that "proper procedure was not followed under [Code §] 18.2-67.7."

---

[7] Counsel's response made clear that he anticipated offering evidence on the issue but had planned to do so through his cross-examination of the complaining witness. Consequently, the record establishes that he had the ability to raise the issue prior to trial or certainly at an earlier time.

2. Preservation of Objection to Exclusion of Evidence of Communicable Virus

The appellant contends that he was entitled to introduce evidence that Q.A. had genital warts. He asserts that he did not have genital warts and consequently the fact that Q.A. allegedly had them was evidence tending to negate her claim that he repeatedly raped her.

The manner in which a trial is "conduct[ed] . . . is committed to the trial judge's discretion." Breeden v. Commonwealth, 43 Va. App. 169, 184-85 (2004) (quoting Justus v. Commonwealth, 222 Va. 667, 676 (1981)). A "circuit court's decision to admit or exclude evidence" is also reviewed "under an abuse of discretion standard." Herndon v. Commonwealth, 280 Va. 138, 143 (2010). "In evaluating whether a trial court abused its discretion . . . , 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports [that] action.'" Grattan v. Commonwealth, 278 Va. 602, 620 (2009) (quoting Beck v. Commonwealth, 253 Va. 373, 385 (1997)). "The abuse-of-discretion standard [also] includes review to determine that the discretion was not guided by erroneous legal conclusions." Porter v. Commonwealth, 276 Va. 203, 260 (2008) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Thomas, 44 Va. App. at 753.

Code § 18.2-67.7, commonly referred to as the rape shield statute, provides that "[i]n prosecutions [for various sexual offenses including rape], general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted." Code § 18.2-67.7(A); see Va. R. Evid. 2:412; Clifford v. Commonwealth, 274 Va. 23, 24 (2007) (published *per curiam* order) (citing Clinebell v. Commonwealth, 235 Va. 319 (1988)). The statute further provides that absent agreement by the complaining witness, "evidence of specific instances of his or her prior sexual conduct shall be admitted only" if a statutorily enumerated exception is met. Code § 18.2-67.7(A); see Code § 18.2-67.10(5) (defining the complaining

- 11 -

witness' "'prior sexual conduct' [as] mean[ing] any sexual conduct on the part of the complaining witness which took place before the conclusion of the trial, excluding the conduct involved in the offense alleged under th[e] article [of the Code titled 'Criminal Sexual Assault']"). Finally, the statute cautions that evidence claimed to fall under an exception "shall not be admitted . . . [at] trial until the court first determines the admissibility of that evidence at an *evidentiary hearing* to be held *before* the evidence is introduced at . . . trial." Code § 18.2-67.7(C) (emphases added).

Here, the appellant asserted at trial, after the witness began to testify on cross-examination, that evidence of the victim's prior diagnosis of genital warts was admissible as "an exception to [the] rape shield [statute]." However, he did not request "an evidentiary hearing" before seeking to admit the evidence as required by Code § 18.2-67.7(C). Additionally, he never provided any explanation regarding why he failed to request such a hearing despite specific references to the requirement by both the prosecutor and the trial court. Consequently, the trial court did not abuse its discretion by concluding that the appellant waived his right to seek admission of this evidence as an exception to the statute by failing to raise the issue or request an evidentiary hearing before attempting to elicit the evidence. See Breeden, 43 Va. App. at 184-85; cf., e.g., Williams v. Commonwealth, 57 Va. App. 750, 767-68 (2011) (holding that failure to make a pretrial motion to dismiss on double jeopardy grounds as required by the applicable statute resulted in a waiver).

To the extent that the appellant now contends that the proffered evidence was not covered by the rape shield statute at all, he failed to articulate that argument with adequate specificity at

- 12 -

trial.[8] See, e.g., Johnson, 58 Va. App. at 637 ("Making one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review." (quoting Edwards, 41 Va. App. at 760)).

Consequently, we conclude that all aspects of this assignment of error are waived.

### C. Exclusion of Evidence of Prior False Accusations

The appellant argues that the trial court erred by excluding his proffered evidence that the complaining witness had previously made false accusations of sexual misconduct against others.

### 1. Relevant Trial Events

At trial, the appellant asked the court to conduct an assessment pursuant to Clinebell v. Commonwealth, 235 Va. 319 (1988), to determine, outside the presence of the jury, whether he would be permitted to offer evidence that Q.A. had previously made false accusations of sexual misconduct. As part of that assessment, the appellant questioned Tashanda Thomas Coleman, who testified that she was the first cousin of the appellant and the aunt of Q.A.

Coleman claimed that Q.A. had made prior "false accusations of sexual conduct." She described Q.A.'s complaints of sexual misconduct against Coleman, Coleman's friend, Coleman's son, Coleman's brother, and a Mr. Dewey. Coleman elaborated that after Q.A. reported that Mr. Dewey "was raping her," Q.A. "switched it and said it was [the appellant]." According to Coleman, the Department of Social Services (DSS) investigated the complaints against everyone but Mr. Dewey and "thr[ew] out" the complaints "because [Q.A.] was found not to be truthful."

---

[8] The appellant never characterized his claimed basis for admitting the evidence as anything other than an "exception" to the rape shield statute. Although counsel for the appellant asserted that "there are ways to get genital warts other than . . . *intercourse*," he did not suggest that these ways did not involve the complaining witness' "sexual conduct" within the meaning of the statute. (Emphasis added). The appellant also does not assert that either of the exceptions to Rule 5A:18 applies, and this Court does not raise those exceptions *sua sponte*. See Edwards, 41 Va. App. at 761, cited with approval in Jones, 293 Va. at 39 n.5.

The prosecutor attempted to impeach Coleman with a 2014 DSS report purporting to indicate that both Q.A. and her sister accused Coleman of physical rather than sexual abuse that year. The prosecutor further proffered that the report was "the only one" that DSS had "referencing [Q.A.]." Coleman agreed that both Q.A. and her sister made allegations of abuse against her while they were all living in Mecklenburg County, but she insisted that the complaints were of sexual abuse. Coleman said that she spoke on the phone about the complaint with Sandra Gregory, Director of Mecklenburg County DSS, and then talked to other social workers in person. Coleman admitted that Q.A. had made a prior accusation of sexual misconduct against Alvin Whittle, which was resolved when Whittle pleaded guilty to raping Q.A. She further admitted that she had a prior felony conviction for forgery and a prior misdemeanor conviction for petit larceny.

Following the proffer, the prosecutor objected to Coleman's testimony based on hearsay. The judge inquired about DSS records, and the appellant admitted that he had not attempted to subpoena any records. The prosecutor represented that he had some of DSS's records showing that Q.A.'s sister, but not Q.A. herself, had made various prior allegations of sexual assault. The judge said he wanted to hear directly from DSS regarding whether it had any records to substantiate Coleman's testimony about prior investigations, noting that "[i]f an investigation was done[, he would] probably let her testify."

In response to the judge's request, DSS Director Gregory testified outside the presence of the jury for purposes of the proffer. She reported that she searched all of DSS's records at the court's request and found no "prior sexual abuse claims" by Q.A. against her aunt during any time frame.

The court then assessed the admissibility of the proffered evidence by analyzing whether, under Clinebell, it met the "threshold" requirement that "a reasonable probability of falsity

- 14 -

exist[ed]." The appellant argued that Coleman's "testimony alone," uncorroborated by DSS reports, "create[d] a reasonable probability that [Q.A.] ha[d] made false accusations in the past."

The prosecutor objected, arguing that the proffered testimony had "foundation issues," was "speculati[ve]," and contained "multiple levels of hearsay." He also referenced Coleman's bias and prior convictions for offenses involving moral turpitude. Finally, he pointed to the evidence impeaching Coleman's claim that Q.A. reported at least some of the allegations to DSS and DSS determined that Q.A. was being untruthful.

The appellant disputed the Commonwealth's claim that Coleman was biased and argued that she had firsthand knowledge of the accusation made against her personally. He argued further that the evidence was "an exception to the hearsay rule," although he did not articulate a basis for this assertion.

The court ruled that Coleman's claims "with regard to others" were hearsay and double hearsay because the record provided "no basis for how she knew" those things. With regard to Coleman's claim that Q.A. made a false report of *sexual* abuse against Coleman herself and her additional claim that DSS found the complaint to be false, the court noted that "we now know that's not true" and no "investigation was actually done." The court also pointed to Coleman's criminal record and her status as "a family member" of the appellant. The court sustained the Commonwealth's objection to the proffered testimony, ruling that it was not "just a question of something [going] to the jury because [the court] ha[d] to determine if . . . a reasonable probability [of] falsity exist[ed]." The judge observed that he "had an opportunity to watch" Coleman on the witness stand and concluded that her testimony "d[id] not . . . r[i]se to th[e] level" of establishing a reasonable probability that the victim had made prior false accusations of sexual abuse.

2.  Merits of Exclusion of Evidence of Alleged Prior False Accusations

The appellant asserts that the trial court erred by excluding his proffered evidence that Q.A. had previously made false accusations of sexual misconduct against Coleman and others.[9]

"Appellate courts review evidentiary rulings under an abuse of discretion standard." Campos v. Commonwealth, 67 Va. App. 690, 702 (2017) (quoting Boone v. Commonwealth, 63 Va. App. 383, 388 (2014)).  This "deferential standard" means that "a 'trial judge's ruling will not be reversed simply because an appellate court disagrees[.]'  [O]nly in those cases [in which] 'reasonable jurists could not differ' has an abuse of discretion [supporting a reversal] occurred." Id. (quoting Thomas, 44 Va. App. at 753).

"The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance . . . ." Bloom v. Commonwealth, 262 Va. 814, 821 (2001) (quoting Witt v. Commonwealth, 215 Va. 670, 674 (1975)).  The "trial court determines these facts" as part of its decision regarding whether to admit or exclude the proffered evidence.  Id.  Such subsidiary findings are binding on appeal "unless 'plainly wrong' or without evidence to support them." Campos, 67 Va. App. at 702 (quoting McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*)).  However, to the extent that the admissibility determination involves a question of law, we review that issue *de novo*.  Beckham v. Commonwealth, 67 Va. App. 654, 658 (2017); see John Crane, Inc. v. Jones, 274 Va. 581, 586-87 (2007).

"[W]hen a specific objection is made to evidence or when inquiry is made by the trial judge concerning the purpose of evidence, the proponent of the evidence has the burden of

---

[9] The appellant's argument includes a claim that the trial court applied the wrong legal standard.  The Commonwealth suggests that the appellant never made this argument below.  This allegation is encompassed by the appellant's claim at trial that the court should have allowed the jury to assess Coleman's credibility itself.  Consequently, Rule 5A:18 does not bar this claim, and we consider it as part and parcel of this assignment of error.

establishing its admissibility." Neal v. Commonwealth, 15 Va. App. 416, 420 (1992), cited with approval in Creamer v. Commonwealth, 64 Va. App. 185, 194-95 (2015). Ordinarily, "specific instances of the conduct of a witness may not be used to attack or support credibility." See Va. R. Evid. 2:608(b)(1); Clinebell, 235 Va. at 323-24; Kent Sinclair, The Law of Evidence in Virginia § 12-5[a], at 712 (8th ed. 2018) (noting pursuant to Rule 2:608 that "impeaching the truthfulness of any witness . . . can only be done by reputation proof and not by cluttering the record with evidence of specific instances of that prior witness' lying or false behavior"). An exception to this general rule permits the impeachment of "a complaining witness in a sexual assault case . . . [with] prior false accusations of sexual misconduct." Va. R. Evid. 2:608(e); see Clinebell, 235 Va. at 324-25. Before any impeachment may occur, however, the trial judge must "make[] a threshold determination that a reasonable probability of falsity exists." Clinebell, 235 Va. at 325; see Roadcap v. Commonwealth, 50 Va. App. 732, 739 (2007). Only if the judge makes such a determination, by a preponderance of the evidence, may the party make further inquiry. See Clinebell, 235 Va. at 325; Bloom, 262 Va. at 821.

Critical to this case is the principle that "[u]nless prior claims of sexual abuse are 'patently untrue' on their face," a defendant seeking to prove such claims at trial "must proffer evidence *sufficient to persuade [the] trial court* of a 'reasonable probability that the victim's allegations were false.'" Roadcap, 50 Va. App. at 740 (emphasis added) (first quoting Clinebell, 235 Va. at 325; then quoting Richardson v. Commonwealth, 42 Va. App. 236, 242 (2004)). We have recognized repeatedly that "mere denial testimony" by an alleged offender "is inherently self-serving and does not, by itself, establish falsity." Richardson, 42 Va. App. at 241, quoted with approval in Roadcap, 50 Va. App. at 740. Consequently, a trial court does not abuse its discretion when it concludes that an alleged offender's denial is insufficient to support the

admission of his or her testimony to prove a prior false accusation for impeachment purposes. See Richardson, 42 Va. App. at 242.

The trial court was not required to accept Coleman's self-serving testimony that Q.A. previously falsely accused Coleman of sexual abuse. The record makes clear that the trial court gave conscientious consideration to the statutory requirements and the proffered evidence, and took the additional step of asking for any related information from DSS. Although Coleman testified that a DSS report corroborated her assertion regarding both the existence of Q.A.'s complaint and its falsity, the DSS director who searched the agency's records testified that no investigation was conducted and no such report existed. This testimony further supports the trial court's conclusion that Coleman's allegations failed to meet the standard of establishing a reasonable probability that Q.A. made prior false allegations of sexual misconduct against Coleman.

Additionally, if a trial court need not accept a testifying witness' self-serving statement that he or she personally did not abuse the complaining witness, the judge is similarly not required to accept as credible that witness' testimony that third parties also did not do so. See Roadcap, 50 Va. App. at 736, 740. Finally, the appellant did not provide adequate evidence to establish Coleman's basis of knowledge for her claims that Q.A.'s alleged reports about third parties were false. See Va. Rs. Evid. 2:602 (requiring evidence that a witness "has personal knowledge of [a] matter" to support the witness' testimony about that matter), 2:802 (prohibiting hearsay except as otherwise provided by the rules, statutes, or case law), 2:805 (prohibiting hearsay within hearsay unless "each part of the . . . statement[] conforms with" a hearsay exception).

For these reasons, we hold that the trial court did not err by refusing to admit Coleman's proffered testimony about Q.A.'s alleged prior false allegations of sexual misconduct.

III. CONCLUSION

We conclude that the appellant failed to preserve for appeal his challenge regarding juror unanimity for his single rape conviction because he did not make an adequate contemporaneous objection to the instruction and also did not object immediately after the verdict or when the jury was polled. We similarly hold that he waived his contention that the trial court improperly excluded his proffered evidence that the complaining witness had genital warts because he did not raise the issue prior to trial as required by statute. Finally, we hold that the court did not err in excluding the proffered testimony that the complaining witness had made prior false allegations of sexual abuse because the evidence supports the trial court's finding that the appellant failed to make threshold showings that such allegations were made and were false. Consequently, we affirm the convictions.

<u>Affirmed.</u>